# Exhibit 1

| **From:** | "Marsilio, Kim" <KMarsilio@sompo-intl.com> |
| **Sent:** | Thu, 20 Sep 2018 15:17:12 -0500 (CDT) |
| **To:** | "Sentman, Jeremy" <JSentman@sompo-intl.com> |
| **Subject:** | James Justice GAI's |
| **Attachments:** | Untitled.PDF - Adobe Acrobat.pdf |

Let me know if you want anything else out of the file.  I have the library of a file at my desk.

CONFIDENTIAL

LEXON-00003306

Bond Safeguard Insurance Company
Lexon Insurance Company
Lombard, Illinois



## GENERAL AGREEMENT OF INDEMNITY

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Bond Safeguard Insurance Company, Illinois, and /or Lexon Insurance Company, Texas, with Executive Offices in Lombard, Illinois hereinafter called the Company, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for or on behalf of Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the company to execute such bonds and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable consideration, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows:

1. The Indemnitors will pay to the Company, at its Executive Offices in Lombard, Illinois, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising there from, and until the Indemnitors shall deliver to the Company at its Executive Offices in Lombard, Illinois, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Company.

3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in Lombard, Illinois.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Indemnitors to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the

Page 1 of 4

CONFIDENTIAL

LEXON-00003307

breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7. That it shall not be necessary for the Company to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, co-sureties, and re-insurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a security agreement to the Company, as a surety and also a financing statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Company without in any way abrogating, restricting or limiting the rights of the Company under this Agreement or under law, or in equity.

17. At any time, and until such time as the liability of the Company under any and all said Bonds is terminated, the Company shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Company is hereby authorized to furnish the Company any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

CONFIDENTIAL                                                                                  LEXON-00003308

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Indemnitors have suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Indemnitor's conviction for a felony, imprisonment, incompetence, insolvency, or bankruptcy of the Indemnitors, or the appointment of a receiver or trustee for the Indemnitors, or the property of the Indemnitors, or in the event of an assignment for the benefit of creditors of the Indemnitors, or if any action is taken by or against the Indemnitors under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Indemnitors under said Act, or if any action is taken by or against the Indemnitors under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Indemnitors and Indemnitors to complete or arrange for the completion of the same, and the Indemnitors and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS— SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

IN TESTIMONY WHEREOF, the undersigned Indemnitors agree that the effective date of this agreement of indemnity is the 27th day of February, 2010.

Addresses:

106 Lockhead Drive, Beaver, WV 25813

James C. Justice Companies, Inc.

By _____ (L.S.)
James C. Justice, Vice-President

Kentucky Fuel Corporation

106 Lockhead Drive, Beaver, WV 25813

By _____ (L.S.)
James C. Justice, Vice-President

**STREET**
**CITY, STATE ZIP CODE**

By: _____ (L.S.)

**STREET**
**CITY, STATE ZIP CODE**

By: _____ (L.S.)

**STREET**
**CITY, STATE ZIP CODE**

By: _____ (L.S.)
**NAME, INDIVIDUALLY**

**STREET**

Page 3 of 4

CONFIDENTIAL                                                                 LEXON-00003309

**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

**STREET**
**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

**STREET**
**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

**STREET**
**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

**STREET**
**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

**STREET**
**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

**STREET**
**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

**STREET**
**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

**STREET**
**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

**STREET**
**CITY, STATE ZIP CODE**

By:_____(L.S.)
     **NAME, INDIVIDUALLY**

IMPORTANT: COMPLETE PHYSICAL ADDRESS INCLUDING ZIP CODE MUST BE GIVEN FOR ALL INDEMNITORS.
INDIVIDUAL INDEMNITORS MUST FURNISH ADDRESS OF PRIMARY RESIDENCE.

CONFIDENTIAL

LEXON-00003310

Bond Safeguard Insurance Company
Lexon Insurance Company
Lombard, Illinois



### GENERAL AGREEMENT OF INDEMNITY

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Bond Safeguard Insurance Company, Illinois, and /or Lexon Insurance Company, Texas, with Executive Offices in Lombard, Illinois hereinafter called the Company, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for or on behalf of Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the company to execute such bonds and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable consideration, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows:

1. The Indemnitors will pay to the Company, at its Executive Offices in Lombard, Illinois, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising there from, and until the Indemnitors shall deliver to the Company at its Executive Offices in Lombard, Illinois, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Company.

3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in Lombard, Illinois.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Indemnitors to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the

Page 1 of 5

CONFIDENTIAL                                                                                          LEXON-00003311

breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7. That it shall not be necessary for the Company to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, co-sureties, and re-insurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a security agreement to the Company, as a surety and also a financing statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Company without in any way abrogating, restricting or limiting the rights of the Company under this Agreement or under law, or in equity.

17. At any time, and until such time as the liability of the Company under any and all said Bonds is terminated, the Company shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Company is hereby authorized to furnish the Company any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

CONFIDENTIAL                                                                                          LEXON-00003312

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Indemnitors have suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Indemnitor's conviction for a felony, imprisonment, incompetence, insolvency, or bankruptcy of the Indemnitors, or the appointment of a receiver or trustee for the Indemnitors, or the property of the Indemnitors, or in the event of an assignment for the benefit of creditors of the Indemnitors, or if any action is taken by or against the Indemnitors under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Indemnitors under said Act, or if any action is taken by or against the Indemnitors under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Indemnitors to complete or arrange for the completion of the same, and the Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS— SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

IN TESTIMONY WHEREOF, the undersigned Indemnitors agree that the effective date of this agreement of indemnity is the 30th day of April, 2010.

Addresses:
Street Address
City, State Zip Code

106 Lockheed Drive, Beaver, WV 25813

_____

James C. Justice Companies, Inc. and all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired.

By_____ (L.S.)
Name, Title  PResiDeNT

Street Address
City, State Zip Code

300 W. Main Street, White Sulphur Springs, WV 24986

_____

Greenbrier Hotel Corporation and all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired.

By_____ (L.S.)
Name, Title  PResiDeNT

Street Address
City, State Zip Code

_____

By:_____ (L.S.)
Name, Title

Street Address
City, State Zip Code

_____

By:_____ (L.S.)
Name, Title

Addresses:
Street Address
City, State Zip Code

_____

By:_____ (L.S.)
Name, Title

Page 3 of 5

CONFIDENTIAL

LEXON-00003313

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Addresses:

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

[PRINCIPAL NAME] and all subsidiaries and affiliates
now owned and/or hereafter created, controlled,
managed or acquired.

By:_____(L.S.)
Name, Title

[PRINCIPAL NAME] and all subsidiaries and affiliates
now owned and/or hereafter created, controlled,
managed or acquired.

By:_____(L.S.)
Name, Title

[PRINCIPAL NAME] and all subsidiaries and affiliates
now owned and/or hereafter created, controlled,
managed or acquired.

By:_____(L.S.)
Name, Title

[PRINCIPAL NAME] and all subsidiaries and affiliates
now owned and/or hereafter created, controlled,
managed or acquired.

By:_____(L.S.)
Name, Title

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

Page 4 of 5

CONFIDENTIAL

LEXON-00003314

_____

Street Address
City, State Zip Code
_____

Street Address
City, State Zip Code
_____

Street Address
City, State Zip Code
_____

Street Address
City, State Zip Code
_____

Street Address
City, State Zip Code
_____

Street Address
City, State Zip Code
_____

Street Address
City, State Zip Code
_____

Street Address
City, State Zip Code
_____

Street Address
City, State Zip Code
_____

Street Address
City, State Zip Code
_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

IMPORTANT: COMPLETE PHYSICAL ADDRESS INCLUDING ZIP CODE MUST BE GIVEN FOR ALL INDEMNITORS.
INDIVIDUAL INDEMNITORS MUST FURNISH ADDRESS OF PRIMARY RESIDENCE.

CONFIDENTIAL                                    LEXON-00003315

# INDEMNITY AGREEMENT

The undersigned Applicant(s) and Indemnitor(s), (hereinafter referred to as "Indemnitors") hereby certify that the forgoing declarations made and answers given are the truth, without reservation, and are made for the purpose of inducing Lexon Insurance Company and/or Bond Safeguard Insurance Company, its affiliates, parent and subsidiaries, individually and collectively called Lexon Surety Group (hereinafter referred to as "Surety") to execute a certain bond(s) or undertaking(s) herein applied for, and all subsequent renewal, continuation or increase of the same or any bond(s) of similar nature given in substitution or renewal thereof (all comprehended in the word "bond(s)" or "undertaking(s)" as herein used.

If Surety shall execute or procure the execution of the bond(s) applied for, which bond(s) are hereby referred to and made a part of this agreement, the undersigned, in consideration thereof, jointly and severally covenant and agree with the Surety as follows:

1. Surety may, at its sole discretion, deny, pay, compromise, defend or appeal any claim or suit against the Bond(s). An itemized statement of or sworn voucher from Surety attesting to the loss shall be prima facie evidence of the loss. Indemnitor(s) expressly waive notice of any claim or demand against the Bond(s) or information provided to the Surety;

2. Until full performance of the obligation(s) and exonerations of the Bond(s), satisfactory to it has been obtained, Surety may freely access, examine and copy Indemnitor's books, records, credit reports, financial statements, bank account records, accounts or any other financial records of any form ("hereinafter known as "Records"). Indemnitor(s) authorize third parties in possession of these records to furnish to Surety any information requested in connection with any transaction;

3. The Indemnitor(s) shall pay the premiums and renewal premiums for each Bond issued hereunder, inclusive of initial, fully earned, premium and all subsequent renewals, extensions or modifications until the Surety has received written legal evidence, satisfactory to the Surety, of its discharge from any and all such Bond(s) and all liability related thereto;

4. The Indemnitor(s) agree to fully indemnify the Surety and to defend and save it harmless from any and all losses incurred as a result of the issuance of the Bond(s), including, but not limited to interest, costs, attorneys fees, incurred by the Surety by reason of any claims against the Surety under any such Bond(s) issued by Surety;

5. If Surety establishes a reserve account, the Indemnitor(s) shall immediately upon demand provide Surety with collateral acceptable to Surety equal to the reserve set and any future reserve increases, whether or not Surety has yet made a payment or incurred a loss, or at any given point that Surety determines collateralization is required for any reason. Surety may retain the collateral until all actual and potential claims and losses of any type against the Bond(s) are exonerated and all loss is fully reimbursed;

6. Indemnitor(s), and each of them, hereby irrevocably appoints Surety, or its designee, as his, her or its attorney-in-fact with the right and power, but not the obligation, to exercise all of the rights assigned to Surety under this agreement and to make, execute and deliver any and all additional contracts, instruments, assignments, documents or papers (including, but not limited to, the endorsement of checks or other instruments payable to Principal or any Indemnitor representing payment of monies) deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the assignments or rights contained herein. It is expressly agreed that this power-of-attorney is coupled with the interest of Surety in receiving the indemnification from Indemnitor(s). Indemnitor(s) hereby ratify all acts by Surety or its designee as attorney-in-fact; and,

7. A facsimile, photocopy, electronic or optical reproduction shall be fully admissible in a court of law with the same force and effect as the original.

8. This Indemnity Agreement covers specifically IBCS Mining Inc. Kentucky Division Bond No(s)1066564,1066565,1066566. The obligations and indemnity of the undersigned is effective March 30, 2016.

IN TESTIMONY WHEREOF, the undersigned have hereto set their hands and seal this ___30th___ day of __March__, 20 _16_.

Signed, Sealed and Delivered in the presence of;

**Name of Principal** _____

**Attest or Witness** _____

**Signature and Title** _____

ADDITIONAL INDEMNITORS (Please give home address and type or print name of each indemnitor below signature

*[signature]* Charles A. Henthorn
**Attest or Witness**

Signature: _____ Indemnitor
Print: Southern Coal Corporation    as Secretary SS#: ▆▆▆▆
Address: 302 South Jefferson Street, Ste. 600 Roanoke, VA 24011

*[signature]* Charles A. Henthorn
**Attest or Witness**

Signature: _____ Indemnitor
Print: James C. Justice Companies, Inc.    as Secretary of SS#: ▆▆▆▆
Address: 302 South Jefferson Street, Ste. 600 Roanoke, VA 24011

**Attest or Witness** _____

Signature: _____ Indemnitor
Print: _____ SS#: _____
Address: _____

**Attest or Witness** _____

**FRAUD WARNING**

ANY PERSON, WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME.

By: _____

**REVIEWED**
MAY 1 2016
By: _____

Signature: _____ Indemnitor
Print: _____ SS#: _____
Address: _____

CONFIDENTIAL                                                LEXON-00003316

## INDEMNITY AGREEMENT

The undersigned Applicant(s) and Indemnitor(s), (hereinafter referred to as "Indemnitors") hereby certify that the forgoing declarations made and answers given are the truth without reservation, and are made for the purpose of inducing Lexon Insurance Company and/or Bond Safeguard Insurance Company, its affiliates, parent and subsidiaries, individually and collectively called Lexon Surety Group (hereinafter referred to as "Surety") to execute a certain bond(s) or undertaking(s) herein applied for, and all subsequent renewal, continuation or increase of the same or any bond(s) of similar nature given in substitution or renewal thereof (all comprehended in the word "bond(s)" or "undertaking(s)" as herein used.

If Surety shall execute or procure the execution of the bond(s) applied for, which bond(s) are hereby referred to and made a part of this agreement, the undersigned, in consideration thereof, jointly and severally covenant and agree with the Surety as follows:

1. Surety may, at its sole discretion, deny, pay, compromise, defend or appeal any claim or suit against the Bond(s). An itemized statement of or sworn voucher from Surety attesting to the loss shall be prima facie evidence of the loss. Indemnitor(s) expressly waive notice of any claim or demand against the Bond(s) or information provided to the Surety;

2. Until full performance of the obligation(s) and exonerations of the Bond(s), satisfactory to it has been obtained, Surety may freely access, examine and copy Indemnitor's books, records, credit reports, financial statements, bank account records, accounts or any other financial records of any form ("hereinafter known as "Records"). Indemnitor(s) authorizes third parties in possession of these records to furnish to Surety any information requested in connection with any transaction;

3. The Indemnitor(s) shall pay the premiums and renewal premiums for each Bond issued hereunder, inclusive of initial, fully earned, premium and all subsequent renewals, extensions or modifications until the Surety has received written legal evidence, satisfactory to the Surety, of its discharge from any and all such Bond(s) and all liability related thereto;

4. The Indemnitor(s) agree to fully indemnify the Surety and to defend and save it harmless from any and all losses incurred as a result of the issuance of the Bond(s), including, but not limited to interest, costs, attorneys fees, incurred by the Surety by reason of any claims against the Surety under any such Bond(s) issued by Surety;

5. If Surety establishes a reserve account, the Indemnitor(s) shall immediately upon demand provide Surety with collateral acceptable to Surety equal to the reserve set and any future reserve increases, whether or not Surety has yet made a payment or incurred a loss, or at any given point that Surety determines collateralization is required for any reason. Surety may retain the collateral until all actual and potential claims and losses of any type against the Bond(s) are exonerated and all loss is fully reimbursed;

6. Indemnitor(s), and each of them, hereby irrevocably appoints Surety, or its designee, as his, her or its attorney-in-fact with the right and power, but not the obligation, to exercise all of the rights assigned to Surety under this agreement and to make, execute and deliver any and all additional contracts, instruments, assignments, documents or papers (including, but not limited to, the endorsement of checks or other instruments payable to Principal or any Indemnitor representing payment of monies) deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the assignments or rights contained herein. It is expressly agreed that this power-of-attorney is coupled with the interest of Surety in receiving the indemnification from Indemnitor(s). Indemnitor(s) hereby ratify all acts by Surety or its designee as attorney-in-fact; and,

7. A facsimile, photocopy, electronic or optical reproduction shall be fully admissible in a court of law with the same force and effect as the original.

8. This Indemnity Agreement covers specifically True Energy Fuels, LLC, Permit No. 1102056 Bond No. 1076427 in the amount of $550,200. The obligations and indemnity of the undersigned is effective February 19, 2016, the date the Obligee approved application for permit.

IN TESTIMONY WHEREOF, the undersigned have hereto set their hands and seal this _19th_ day of _February_ , 20 _16_ .

Signed, Sealed and Delivered in the presence of;

**Name of Principal** _____

**Attest or Witness** _____

**Signature and Title** _____

ADDITIONAL INDEMNITORS (Please give home address and type or print name of each Indemnitor below signature

**Attest or Witness**

Signature: _____ Indemnitor
BY: Stephen W. Ball AS: Secretary
Print: Southern Coal Corporation  SS#: _____

Address: 302 South Jefferson Street, Ste. 600 Roanoke, VA 24011

**Attest or Witness**

Signature: _____ Indemnitor
BY: Stephen W. Ball As: Secretary
Print: James C. Justice Companies, Inc.  SS#: _____

Address: 302 South Jefferson Street, Ste. 600 Roanoke, VA 24011

**Attest or Witness**

Signature: _____ Indemnitor

Print: _____ SS#: _____

FRAUD WARNING

ANY PERSON, WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME.

Address: _____

REVIEWED

Signature: _____ Indemnitor
MAR 2016
Print: _____ SS#: _____

By: _____
Address: _____

CONFIDENTIAL                                                                LEXON-00003317

## INDEMNITY AGREEMENT

The undersigned Applicant(s) and Indemnitor(s), (hereinafter referred to as "Indemnitors") hereby certify that the forgoing declarations made and answers given are the truth without reservation, and are made for the purpose of inducing Lexon Insurance Company and/or Bond Safeguard Insurance Company, its affiliates, parent and subsidiaries, individually and collectively called Lexon Surety Group (hereinafter referred to as "Surety") to execute a bond(s) or undertaking(s) herein applied for, and all subsequent renewal, continuation or increase of the same or any bond(s) of similar nature given in substitution or renewal thereof (all comprehended in the word "bond(s)" or "undertaking(s)" as herein used.

If Surety shall execute or procure the execution of the bond(s) applied for, which bond(s) are hereby referred to and made a part of this agreement, the undersigned, in consideration thereof, jointly and severally covenant and agree with the Surety as follows:

1. Surety may, at its sole discretion, deny, pay, compromise, defend or appeal any claim or suit against the Bond(s). An itemized statement of or sworn voucher from Surety attesting to the loss shall be prima facie evidence of the loss. Indemnitor(s) expressly waive notice of any claim or demand against the Surety or information provided to the Surety;

2. Until full performance of the obligation(s) and exonerations of the Bond(s), satisfactory to it has been obtained, Surety may freely access, examine and copy Indemnitor's books, records, credit reports, financial statements, bank account records, accounts or any other financial records of any form ("hereinafter known as "Records"). Indemnitor(s) authorize third parties in possession of these records to furnish to Surety any information requested in connection with any transaction;

3. The Indemnitor(s) shall pay the premiums and renewal premiums for each Bond issued hereunder, inclusive of initial, fully earned, premium and all subsequent renewals, extensions or modifications until the Surety has received written legal evidence, satisfactory to the Surety, of its discharge from any and all such Bond(s) and all liability related thereto;

4. The Indemnitor(s) agree to fully indemnify the Surety and to defend and save it harmless from any and all losses incurred as a result of the issuance of the Bond(s), including, but not limited to interest, costs, attorneys fees, incurred by the Surety by reason of any claims against the Surety under any such Bond(s) issued by Surety;

5. If Surety establishes a reserve account, the Indemnitor(s) shall immediately upon demand provide Surety with collateral acceptable to Surety equal to the reserve set and any future reserve increases, whether or not Surety has yet made a payment or incurred a loss, or at any given point that Surety determines collateralization is required for any reason. Surety may retain the collateral until all actual and potential claims and losses of any type against the Bond(s) are exonerates and all loss is fully reimbursed;

6. Indemnitor(s), and each of them, hereby irrevocably appoints Surety, or its designee, as his, her or its attorney-in-fact with the right and power, but not the obligation, to exercise all of the rights assigned to Surety under this agreement and to make, execute and deliver any and all additional contracts, instruments, assignments, documents or papers (including, but not limited to, the endorsement of checks or other instruments payable to Principal or any Indemnitor representing payment of monies) deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the assignments or rights contained herein. It is expressly agreed that this power-of-attorney is coupled with the interest of Surety in receiving the indemnification from Indemnitor(s). Indemnitor(s) hereby ratify all acts by Surety or its designee as attorney-in-fact; and,

7. A facsimile, photocopy, electronic or optical reproduction shall be fully admissible in a court of law with the same force and effect as the original.

8. This Indemnity Agreement covers specifically IBCS Mining Inc. Kentucky Division Bond No(s)1069939 $95,000.,1069940 $150,000., 1069941 $205,500. The obligations and indemnity of the undersigned is effective December 29, 2015, the date the Obligee approved application for permit.

IN TESTIMONY WHEREOF, the undersigned have hereto set their hands and seal this ___29th___ day of ___December___, 20 _15_.

Signed, Sealed and Delivered in the presence of;

_____
Name of Principal

_____
Attest or Witness

_____
Signature and Title

ADDITIONAL INDEMNITORS (Please give home address and type or print name of each indemnitor below signature

_____
Attest or Witness        Ashley Suggs

Signature: _____ Indemnitor  as executive vice president of
Print: Southern Coal Corporation   SS#:

Address: 302 South Jefferson Street, Ste. 600 Roanoke, VA 24011

_____
Attest or Witness

Signature: _____ Indemnitor as executive vice president of
Print: James C. Justice Companies, Inc.  SS#:

Address: 302 South Jefferson Street, Ste. 600 Roanoke, VA 24011

_____
Attest or Witness

**REVIEWED**

JAN 2016

Signature: _____ Indemnitor

Print: _____  SS#: _____

_____
Attest or Witness

FRAUD WARNING

ANY PERSON, WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY 2/10/16
INSURANCE COMPANY, FILES AN APPLICATION FOR INSURANCE CONTAINING
ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF
MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO,
COMMITS A FRAUDULENT ACT, WHICH IS A CRIME.

Address: _____

Signature: _____ Indemnitor

Print: _____  SS#: _____

Address: _____

CONFIDENTIAL                                                                    LEXON-00003318

# INDEMNITY AGREEMENT

The undersigned Applicant(s) and Indemnitor(s), (hereinafter referred to as "Indemnitors") hereby certify that the forgoing declarations made and answers given are the truth without reservation, and are made for the purpose of inducing Lexon Insurance Company and/or Bond Safeguard Insurance Company, its affiliates, parent and subsidiaries, individually and collectively called Lexon Surety Group (hereinafter referred to as "Surety") to execute a certain bond(s) or undertaking(s) herein applied for, and all subsequent renewal, continuation or increase of the same or any bond(s) of similar nature given in substitution or renewal thereof (all comprehended in the word "bond(s)" or "undertaking(s)" as herein used.

If Surety shall execute or procure the execution of the bond(s) applied for, which bond(s) are hereby referred to and made a part of this agreement, the undersigned, in consideration thereof, jointly and severally covenant and agree with the Surety as follows:

1. Surety may, at its sole discretion, deny, pay, compromise, defend or appeal any claim or suit against the Bond(s). An itemized statement of or sworn voucher from Surety attesting to the loss shall be prima facie evidence of the loss. Indemnitor(s) expressly waive notice of any claim or demand against the Bond(s) or Information provided to the Surety;

2. Until full performance of the obligation(s) and exonerations of the Bond(s), satisfactory to it has been obtained, Surety may freely access, examine and copy Indemnitor's books, records, credit reports, financial statements, bank account records, accounts or any other financial records of any form ("hereinafter known as "Records"). Indemnitor(s) authorize third parties in possession of these records to furnish to Surety any information requested in connection with any transaction;

3. The Indemnitor(s) shall pay the premiums and renewal premiums for each Bond issued hereunder, inclusive of initial, fully earned, premium and all subsequent renewals, extensions or modifications until the Surety has received written legal evidence, satisfactory to the Surety, of its discharge from any and all such Bond(s) and all liability related thereto;

4. The Indemnitor(s) agree to fully indemnify the Surety and to defend and save it harmless from any and all losses incurred as a result of the issuance of the Bond(s), including, but not limited to interest, costs, attorneys fees, incurred by the Surety by reason of any claims against the Surety under any such Bond(s) issued by Surety;

5. If Surety establishes a reserve account, the Indemnitor(s) shall immediately upon demand provide Surety with collateral acceptable to Surety equal to the reserve set and any future reserve increases, whether or not Surety has yet made a payment or incurred a loss, or at any given point that Surety determines collateralization is required for any reason. Surety may retain the collateral until all actual and potential claims and losses of any type against the Bond(s) are exonerated and all loss is fully reimbursed;

6. Indemnitor(s), and each of them, hereby irrevocably appoints Surety, or its designee, as his, her or its attorney-in-fact with the right and power, but not the obligation, to exercise all of the rights assigned to Surety under this agreement and to make, execute and deliver any and all additional contracts, instruments, assignments, documents or papers (including, but not limited to, the endorsement of checks or other instruments payable to Principal or any Indemnitor representing payment of monies) deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the assignments or rights contained herein. It is expressly agreed that this power-of-attorney is coupled with the interest of Surety in receiving the indemnification from Indemnitor(s). Indemnitor(s) hereby ratify all acts by Surety or its designee as attorney-in-fact; and,

7. A facsimile, photocopy, electronic or optical reproduction shall be fully admissible in a court of law with the same force and effect as the original.

8. This Indemnity agreement covers specifically IBCS Mining, Inc. Kentucky Division Bond #1066529 a copy of which is hereby attached. The obligations and indemnity of the undersigned is effective as of the **1/22/15** (the date the permit transfer was requested from the Bond Obligee) and shall cover all liability under the bond going forward from **1/22/15**.

IN TESTIMONY WHEREOF, the undersigned have hereto set their hands and seal this **28** day of **January**, 20 **15**.

Signed, Sealed and Delivered in the presence of;

Name of Principal _____

Attest or Witness _____      Signature and Title _____

ADDITIONAL INDEMNITORS (Please give home address and type or print name of each indemnitor below signature

Attest or Witness _____

Attest or Witness _____

Signature: _____ Indemnitor
Print: Southern Coal Corporation    FEIN
SS#: ▮▮▮▮
Address: 302 South Jefferson Street, Ste. 600, Roanoke, VA 24011

Attest or Witness _____

Signature: _____ Stephen W. Ball as CFO _____ Indemnitor
Print: James C. Justice Companies, Inc.    FEIN
SS#: ▮▮▮▮ Secretary
Address: 302 South Jefferson Street, Ste. 600, Roanoke, VA 24011

Attest or Witness _____

Signature: _____ Stephen W. Ball as CFO _____ Indemnitor
Secretary
Print: _____ SS#: _____

Address: _____

FRAUD WARNING

ANY PERSON, WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME.

Signature: _____ Indemnitor
Print: _____ SS#: _____
Address: _____

CONFIDENTIAL

LEXON-00003319

REVIEWED
DEC 1 2 2016
COPY

# INDEMNITY AGREEMENT

The undersigned Applicant(s) and Indemnitor(s), (hereinafter referred to as "Indemnitors") hereby certify that the forgoing declarations made and answers given are the truth without reservation, and are made for the purpose of inducing Lexon Insurance Company and/or Bond Safeguard Insurance Company, its affiliates, parent and subsidiaries, individually and collectively called Lexon Surety Group (hereinafter referred to as "Surety") to execute a certain bond(s) or undertaking(s) herein applied for, and all subsequent renewal, continuation or increase of the same or any bond(s) of similar nature given in substitution or renewal thereof (all comprehended in the word "bond(s)" or "undertaking(s)" as herein used.

If Surety shall execute or procure the execution of the bond(s) applied for, which bond(s) are hereby referred to and made a part of this agreement, the undersigned, in consideration thereof, jointly and severally covenant and agree with the Surety as follows:

1. Surety may, at its sole discretion, deny, pay, compromise, defend or appeal any claim or suit against the Bond(s). An itemized statement of or sworn voucher from Surety attesting to the loss shall be prima facie evidence of the loss. Indemnitor(s) expressly waive notice of any claim or demand against the Bond(s) or information provided to the Surety;

2. Until full performance of the obligation(s) and exonerations of the Bond(s), satisfactory to it has been obtained, Surety may freely access, examine and copy indemnitor's books, records, credit reports, financial statements, bank account records, accounts or any other financial records of any form ("hereinafter known as "Records"). Indemnitor(s) authorize third parties in possession of these records to furnish to Surety any information requested in connection with any transaction;

3. The Indemnitor(s) shall pay the premiums and renewal premiums for each Bond issued hereunder, inclusive of initial, fully earned, premium and all subsequent renewals, extensions or modifications until the Surety has received written legal evidence, satisfactory to the Surety, of its discharge from any and all such Bond(s) and all liability related thereto;

4. The Indemnitor(s) agree to fully indemnify the Surety and to defend and save it harmless from any and all losses incurred as a result of the issuance of the Bond(s), including, but not limited to interest, costs, attorneys fees, incurred by the Surety by reason of any claims against the Surety under any such Bond(s) issued by Surety;

5. If Surety establishes a reserve account, the Indemnitor(s) shall immediately upon demand provide Surety with collateral acceptable to Surety equal to the reserve set and any future reserve increases, whether or not Surety has yet made a payment or incurred a loss, or at any point that Surety determines collateralization is required for any reason. Surety may retain the collateral until all actual and potential claims and losses of any type against the Bond(s) are exonerated and all loss is fully reimbursed;

6. Indemnitor(s), and each of them, hereby irrevocably appoints Surety, or its designee, as his, her or its attorney-in-fact with the right and power, but not the obligation, to exercise all of the rights assigned to Surety under this agreement and to make, execute and deliver any and all additional contracts, instruments, assignments, documents or papers (including, but not limited to, the endorsement of checks or other instruments payable to Principal or any Indemnitor representing payment of monies) deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the assignments or rights contained herein. It is expressly agreed that this power-of-attorney is coupled with the interest of Surety in receiving the indemnification from Indemnitor(s). Indemnitor(s) hereby ratify all acts by Surety or its designee as attorney-in-fact; and,

7. A facsimile, photocopy, electronic or optical reproduction shall be fully admissible in a court of law with the same force and effect as the original.

IN TESTIMONY WHEREOF, the undersigned have hereto set their hands and seal this 28th day of August , 20 14

Signed, Sealed and Delivered in the presence of;

James C. Justice Companies, Inc.

Name of Principal

Attest or Witness

Signature and Title

ADDITIONAL INDEMNITORS (Please give home address and type or print name of each indemnitor below signature

Attest or Witness

Signature: _____ Indemnitor

Print: Southern Coal Corporation SS#:

Address: 818 N. Eisenhower Drive, Beckley WV, 25801

Attest or Witness

Signature: _____ Indemnitor

Print: James C. Justice SS#: ████

Address: 208 Dwyer Ln, Lewisburg, WV 24901

Attest or Witness

Signature: _____ Indemnitor

Print: _____ SS#: _____

Address: _____

Attest or Witness

FRAUD WARNING

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME.

Signature: _____ Indemnitor

Print: _____ SS#: _____

Address: _____

CONFIDENTIAL

LEXON-00003320



Bond Safeguard Insurance Company
Lexon Insurance Company
**COPY**

## GENERAL AGREEMENT OF INDEMNITY

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Bond Safeguard Insurance Company, Illinois, and/or Lexon Insurance Company, Texas, with Executive Offices in Lombard, Illinois hereinafter called the Company, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for or on behalf of Indemnitors or and one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the company to execute such bonds and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable consideration, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows :

1. The Indemnitors will pay to the Company, at its Executive Offices in Lombard, Illinois, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising there from, and until the Indemnitors shall deliver to the Company at its Executive Offices in Lombard, Illinois, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnity and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitors liability therefore to the Company.

3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in Lombard, Illinois.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Indemnitors to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or

Case 3:23-cv-00772    Document 95-1    Filed 07/28/25    Page 17 of 31 PageID #: 1369

CONFIDENTIAL                                                                          LEXON-00003321

materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7. That it shall not be necessary for the Company to give the Indemnitors, or anyone or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, co-sureties, and re-insurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a security agreement to the Company, as a surety and also a financing statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Company without in any way abrogating, restricting or limiting the rights of the Company under this Agreement or under law, or in equity.

17. At any time, and until such time as the liability of the Company under any and all said Bonds is terminated, the Company shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Company is hereby authorized to furnish the Company any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

Case 3:23-cv-00772    Document 95-1    Filed 07/28/25    Page 18 of 31 PageID #: 1370

CONFIDENTIAL                                                                                              LEXON-00003322

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Indemnitors have suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Indemnitor's conviction for a felony, imprisonment, incompetence, insolvency, or bankruptcy of the Indemnitors, or the appointment of a receiver or trustee for the Indemnitors, or the property of the Indemnitors, or in the event of an assignment for the benefit of creditors of the Indemnitors, or if any action is taken by or against the Indemnitors under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Indemnitors under said Act, or if any action is taken by or against the Indemnitors under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Indemnitors and Indemnitors to complete or arrange for the completion of the same, and the Indemnitors and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS— SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS, WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

IN TESTIMONY WHEREOF, the undersigned Indemnitors agree that the effective date of this agreement of indemnity is the 11th day of **July, 2012.**

Addresses:

100 Cranberry Creek Drive
Beckley, WV 25801

**Mechel Bluestone, Inc.** and all subsidiaries and affiliates now owned and/or hereinafter created, controlled, managed or acquired.

By: _____ (L.S.)
Tommy D Lusk (President)

By: _____ (L.S.)

By: _____ (L.S.)

By: _____ (L.S.)

IMPORTANT: COMPLETE PHYSICAL ADDRESS INCLUDING ZIP CODE MUST BE GIVEN FOR ALL INDEMNITORS. INDIVIDUAL INDEMNITORS MUST FURNISH ADDRESS OF PRIMARY RESIDENCE.

CONFIDENTIAL                                                                LEXON-00003323

# INDEMNITY AGREEMENT

The undersigned Applicant(s) and Indemnitor(s), (hereinafter referred to as "Indemnitors") hereby certify that the forgoing declarations made and answers given are the truth without reservation, and are made for the purpose of inducing Lexon Insurance Company and/or Bond Safeguard Insurance Company, its affiliates, parent and subsidiaries, individually and collectively called Lexon Surety Group (hereinafter referred to as "Surety") to execute a certain bond(s) or undertaking(s) herein applied for, and all subsequent renewal, continuation or increase of the same or any bond(s) of similar nature given in substitution or renewal thereof (all comprehended in the word "bond(s)" or "undertaking(s)" as herein used.

If Surety shall execute or procure the execution of the bond(s) applied for, which bond(s) are hereby referred to and made a part of this agreement, the undersigned, in consideration thereof, jointly and severally covenant and agree with the Surety as follows:

1. Surety may, at its sole discretion, deny, pay, compromise, defend or appeal any claim or suit against the Bond(s). An itemized statement of or sworn voucher from Surety attesting to the loss shall be prima facie evidence of the loss. Indemnitor(s) expressly waive notice of any claim or demand against the Bond(s) or information provided to the Surety;

2. Until full performance of the obligation(s) and exonerations of the Bond(s), satisfactory to it has been obtained, Surety may freely access, examine and copy Indemnitor's books, records, credit reports, financial statements, bank account records, accounts or any other financial records of any form ("hereinafter known as "Records"). Indemnitor(s) authorize third parties in possession of these records to furnish to Surety any information requested in connection with any transaction;

3. The Indemnitor(s) shall pay the premiums and renewal premiums for each Bond issued hereunder, inclusive of initial, fully earned, premium and all subsequent renewals, extensions or modifications until the Surety has received written legal evidence, satisfactory to the Surety, of its discharge from any and all such Bond(s) and all liability related thereto;

4. The Indemnitor(s) agree to fully indemnify the Surety and to defend and save it harmless from any and all losses incurred as a result of the issuance of the Bond(s), including, but not limited to interest, costs, attorneys fees, incurred by the Surety by reason of any claims against the Surety under any such Bond(s) issued by Surety;

5. If Surety establishes a reserve account, the Indemnitor(s) shall immediately upon demand provide Surety with collateral acceptable to Surety equal to the reserve set and any future reserve increases, whether or not Surety has yet made a payment or incurred a loss, or at any given point that Surety determines collateralization is required for any reason. Surety may retain the collateral until all actual and potential claims and losses of any type against the Bond(s) are exonerated and all loss is fully reimbursed;

6. Indemnitor(s), and each of them, hereby irrevocably appoints Surety, or its designee, as his, her or its attorney-in-fact with the right and power, but not the obligation, to exercise all of the rights assigned to Surety under this agreement and to make, execute and deliver any and all additional contracts, instruments, assignments, documents or papers (including, but not limited to, the endorsement of checks or other instruments payable to Principal or any Indemnitor representing payment of monies) deemed necessary and proper by Surety in order to give full effect to the intent and meaning of the assignments or rights contained herein. It is expressly agreed that this power-of-attorney is coupled with the interest of Surety in receiving the indemnification from Indemnitor(s). Indemnitor(s) hereby ratify all acts by Surety or its designee as attorney-in-fact; and,

7. A facsimile, photocopy, electronic or optical reproduction shall be fully admissible in a court of law with the same force and effect as the original.

IN TESTIMONY WHEREOF, the undersigned have hereto set their hands and seal this __19th__ day of __June__, 20 __12__

Signed, Sealed and Delivered in the presence of;

**Strong Brothers Mining**
Name of Principal

_____
Signature and Title

Attest or Witness

ADDITIONAL INDEMNITORS (Please give home address and type or print name of each Indemnitor below signature
James C. Justice Companies, Inc., Indemnitor for Strong Brothers Mining
Bond # 1069817

By: Signature: _____ Indemnitor

Attest or Witness

Print: **STEPHEN W. BALL** **: SECRETARY**
**106 LOCKHEED DRIVE**
Address: **BEAVER, WV 25813**

_____
Attest or Witness

Signature: _____ Indemnitor

Print: _____ SS#: _____

Address: _____

_____
Attest or Witness

Signature: _____ Indemnitor

Print: _____ SS#: _____

_____
Attest or Witness

Address: _____

## FRAUD WARNING

ANY PERSON, WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS, FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME

Signature: _____ Indemnitor

Print: _____ SS#: _____

Address: _____

CONFIDENTIAL                                                                LEXON-00003324



## GENERAL AGREEMENT OF INDEMNITY

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Bond Safeguard Insurance Company, Illinois, and /or Lexon Insurance Company, Texas, with Executive Offices in Lombard, Illinois hereinafter called the Company, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for or on behalf of Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the company to execute such bonds and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable consideration, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows:

1. The Indemnitors will pay to the Company, at its Executive Offices in Lombard, Illinois, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising there from, and until the Indemnitors shall deliver to the Company at its Executive Offices in Lombard, Illinois, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Company.

3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in Lombard, Illinois.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Indemnitors to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the

Case 3:23-cv-00772    Document 95-1    Filed 07/28/25    Page 21 of 31 PageID #: 1373

CONFIDENTIAL

LEXON-00003325

breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7. That it shall not be necessary for the Company to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, co-sureties, and re-insurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a security agreement to the Company, as a surety and also a financing statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Company without in any way abrogating, restricting or limiting the rights of the Company under this Agreement or under law, or in equity.

17. At any time, and until such time as the liability of the Company under any and all said Bonds is terminated, the Company shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Company is hereby authorized to furnish the Company any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

Page 2 of 3

CONFIDENTIAL                                                                                      LEXON-00003326

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Indemnitors have suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Indemnitor's conviction for a felony, imprisonment, incompetence, insolvency, or bankruptcy of the Indemnitors, or the appointment of a receiver or trustee for the Indemnitors, or the property of the Indemnitors, or in the event of an assignment for the benefit of creditors of the Indemnitors, or if any action is taken by or against the Indemnitors under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Indemnitors under said Act, or if any action is taken by or against the Indemnitors under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Indemnitors and Indemnitors to complete or arrange for the completion of the same, and the Indemnitors and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS— SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

IN TESTIMONY WHEREOF, the undersigned Indemnitors agree that the effective date of this agreement of indemnity is the ____21st____ day of _December, 2010_.

Addresses:

8915 George Williams Road
Knoxville, TN 37923 _____

**National Coal, LLC**

By: _____ (L.S.)
Daniel A. Roling, President and CEO

Name of Indemnitor

By:_____(L.S.)
Name, Title

Name of Indemnitor

_____

By:_____(L.S.)
Name, Title

Name of Indemnitor

_____

By:_____(L.S.)
Name, Title

_____

IMPORTANT: COMPLETE PHYSICAL ADDRESS INCLUDING ZIP CODE MUST BE GIVEN FOR ALL INDEMNITORS. INDIVIDUAL INDEMNITORS MUST FURNISH ADDRESS OF PRIMARY RESIDENCE.

Case 3:23-cv-00772    Document 95-1    Filed 07/28/25    Page 23 of 31 PageID #: 1375

CONFIDENTIAL                                                                                    LEXON-00003327



# Bond Safeguard Insurance Company
# Lexon Insurance Company
Lombard, Illinois

## GENERAL AGREEMENT OF INDEMNITY

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Bond Safeguard Insurance Company, Illinois, and /or Lexon Insurance Company, Texas, with Executive Offices in Lombard, Illinois hereinafter called the Company, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for or on behalf of indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the company to execute such bonds and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable consideration, the indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows:

1. The Indemnitors will pay to the Company, at its Executive Offices in Lombard, Illinois, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising there from, and until the Indemnitors shall deliver to the Company at its Executive Offices in Lombard, Illinois, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability; or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Company.

3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in Lombard, Illinois.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Indemnitors to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the

Case 3:23-cv-00772    Document 95-1    Filed 07/28/25    Page 24 of 31 PageID #: 1376

CONFIDENTIAL                                                                                          LEXON-00003328

breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7 That it shall not be necessary for the Company to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, co-sureties, and re-insurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a security agreement to the Company, as a surety and also a financing statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Company without in any way abrogating, restricting or limiting the rights of the Company under this Agreement or under law, or in equity.

17. At any time, and until such time as the liability of the Company under any and all said Bonds is terminated, the Company shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Company is hereby authorized to furnish the Company any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

Case 3:23-cv-00772    Document 95-1    Filed 07/28/25    Page 25 of 31 PageID #: 1377

CONFIDENTIAL                                                                      LEXON-00003329

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Indemnitors have suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Indemnitor's conviction for a felony, imprisonment, incompetence, insolvency, or bankruptcy of the Indemnitors, or the appointment of a receiver or trustee for the Indemnitors, or the property of the Indemnitors, or in the event of an assignment for the benefit of creditors of the Indemnitors, or if any action is taken by or against the Indemnitors under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Indemnitors under said Act, or if any action is taken by or against the Indemnitors under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Indemnitors to complete or arrange for the completion of the same, and the Indemnitors shall promptly upon demand pay to the Surety all losses and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS – SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY, HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

IN TESTIMONY WHEREOF, the undersigned Indemnitors agree that the effective date of this agreement of indemnity is the ___27th___ day of ___February___ 20_10_ .

Addresses:

Southern Coal Corporation and all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired.

___106 Lockheed Drive, Beaver, WV 25813___

By _____ (L.S.)
Name, Title  PRESIDENT

James C. Justice Companies, Inc. and all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired.

___106 Lockheed Drive, Beaver, WV 25813___

By: _____ (L.S.)
Name, Title  PRESIDENT

[PRINICPAL NAME] and all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired.

Street Address
City, State Zip Code

_____

By: _____ (L.S.)
Name, Title

[PRINCIPAL NAME] and all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired.

Street Address
City, State Zip Code

_____

By: _____ (L.S.)
Name, Title

Page 3 of 5

CONFIDENTIAL

LEXON-00003330

Addresses:

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

[PRINCIPAL NAME] and all subsidiaries and affiliates
now owned and/or hereafter created, controlled,
managed or acquired.

By:_____(L.S.)
Name, Title

[PRINCIPAL NAME] and all subsidiaries and affiliates
now owned and/or hereafter created, controlled,
managed or acquired.

By:_____(L.S.)
Name, Title

[PRINCIPAL NAME] and all subsidiaries and affiliates
now owned and/or hereafter created, controlled,
managed or acquired.

By:_____(L.S.)
Name, Title

[PRINCIPAL NAME] and all subsidiaries and affiliates
now owned and/or hereafter created, controlled,
managed or acquired.

By:_____(L.S.)
Name, Title

[PRINCIPAL NAME] and all subsidiaries and affiliates
now owned and/or hereafter created, controlled,
managed or acquired.

By:_____(L.S.)
Name, Title

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

Case 3:23-cv-00772    Document 95-1    Filed 07/28/25    Page 27 of 31 PageID #: 1379

CONFIDENTIAL                                                                LEXON-00003331

Addresses:

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

Street Address
City, State Zip Code

_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

By:_____(L.S.)
Name, Individually
SSN:_____

IMPORTANT: COMPLETE PHYSICAL ADDRESS INCLUDING ZIP CODE MUST BE GIVEN FOR ALL INDEMNITORS.
INDIVIDUAL INDEMNITORS MUST FURNISH ADDRESS OF PRIMARY RESIDENCE.

Page 5 of 5

CONFIDENTIAL                                                    LEXON-00003332

Bond Safeguard Insurance Company
Lexon Insurance Company
Lombard, Illinois



### GENERAL AGREEMENT OF INDEMNITY

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Bond Safeguard Insurance Company, Illinois, and /or Lexon Insurance Company, Texas, with Executive Offices in Lombard, Illinois hereinafter called the Company, witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for or on behalf of Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the company to execute such bonds and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable consideration, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows:

1. The Indemnitors will pay to the Company, at its Executive Offices in Lombard, Illinois, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising there from, and until the Indemnitors shall deliver to the Company at its Executive Offices in Lombard, Illinois, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefore, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Company.

3. If the Company shall set up a reserve to cover any claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in Lombard, Illinois.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Indemnitors upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Indemnitors to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the

Page 1

CONFIDENTIAL                                                                                              LEXON-00003333

breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7. That it shall not be necessary for the Company to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with co-sureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, co-sureties, and re-insurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a security agreement to the Company, as a surety and also a financing statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Company without in any way abrogating, restricting or limiting the rights of the Company under this Agreement or under law, or in equity.

17. At any time, and until such time as the liability of the Company under any and all said Bonds is terminated, the Company shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Company is hereby authorized to furnish the Company any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

Page 2

CONFIDENTIAL                                                                                          LEXON-00003334

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Indemnitors have suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Indemnitor's conviction for a felony, imprisonment, incompetence, insolvency, or bankruptcy of the Indemnitors, or the appointment of a receiver or trustee for the Indemnitors, or the property of the Indemnitors, or in the event of an assignment for the benefit of creditors of the Indemnitors, or if any action is taken by or against the Indemnitors under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Indemnitors under said Act, or if any action is taken by or against the Indemnitors under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Indemnitors and Indemnitors to complete or arrange for the completion of the same, and the Indemnitors and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS— SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

IN TESTIMONY WHEREOF, the undersigned Indemnitors agree that the effective date of this agreement of indemnity is the __1st.__ day of __July__, 2009.

Addresses:

8915 George Williams Road
Knoxville, TN 37923

_____

8915 George Williams Road
Knoxville, TN 37923

_____


_____


_____


National Coal Corp.

By: _____ (L.S.)
Michael R. Castle, CPA, Senior Vice President/Chief Financial Officer

National Coal Corporation

By: _____ (L.S.)
Michael R. Castle, CPA, Senior Vice President/Chief Financial Officer

Name of Indemnitor

By: _____ (L.S.)
Name, Title

Name of Indemnitor

By: _____ (L.S.)
Name, Title

Page 3

CONFIDENTIAL

LEXON-00003335