# Exhibit 10

```
  1

  2          UNITED STATES DISTRICT COURT                    09:10
       FOR THE MIDDLE DISTRICT OF TENNESSEE
  3
     LEXON INSURANCE COMPANY,
  4
                 Plaintiff,
  5                                       CASE NO.
          -against-                       3:23-cv-00772
  6
     JAMES C. JUSTICE II,
  7
                 Defendant.
  8

  9       *** CONTAINS CONFIDENTIAL TESTIMONY ***

 10          VIDEO-RECORDED DEPOSITION OF
                    STEPHEN W. BALL
 11
           Cadwalader, Wickersham & Taft LLP
 12                200 Liberty Street
               New York, New York 10281
 13
                      04/10/2024
 14                 9:53 a.m. (EDT)

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24    REPORTED BY:  AMANDA GORRONO, CLR
       CLR NO. 052005-01
 25    JOB NO. J11099996
```

```
 1
 2                          04/10/2024
 3                        9:53 a.m. (EDT)
 4
 5
 6          VIDEO-RECORDED DEPOSITION OF
 7    STEPHEN W. BALL, held at Cadwalader,
 8    Wickersham & Taft LLP 200 Liberty Street
 9    New York, New York 10281, before Amanda
10    Gorrono, Certified Live Note Reporter, and
11    Notary Public of the State of New York.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1

 2    A P P E A R A N C E S

 3    ON BEHALF OF PLAINTIFF LEXON INSURANCE
      COMPANY:
 4
         Sara Bussiere, Esquire
 5       Cadwalader, Wickersham & Taft LLP
         200 Liberty Street
 6       New York, NY 10281
         PHONE:  +1 212 504 6255
 7       E-MAIL: Sara.bussiere@cwt.com

 8              - AND -

 9       Elizabeth Moore, Esquire
         Cadwalader, Wickersham & Taft LLP
10       200 Liberty Street
         New York, NY 10281
11       PHONE:  +1 212 504 6441
         E-MAIL: Elizabeth.moore@cwt.com
12
                -AND-
13
         Diane Lee, Esquire
14       Cadwalader, Wickersham & Taft LLP
         200 Liberty Street
15       New York, NY 10281
         PHONE: +1 212 504 6217
16       E-MAIL: Diane.lee@cwt.com

17    ON BEHALF OF DEFENDANT JAMES C. JUSTICE
      II:
18
         David Pogue, Esquire
19       Carey Douglas Kessler & Ruby PLLC
         707 Virginia Street, East
20       901 Chase Tower
         Charleston, WV 25301
21       PHONE: 304.345.1234
         E-MAIL: Dpogue@cdkrlaw.com
22


23


24    ALSO PRESENT:
      Silvio Facchin, Certified Legal Video
25    Specialist - Esquire Deposition Solutions
```

```
 1              STEPHEN W. BALL
 2   over on Jay's behalf.  There could be some        01:43
 3   e-mails where I was sending them to Lexon         01:43
 4   with some thoughts from Jay.  But -- but I        01:44
 5   would not have been, like, actively               01:44
 6   negotiating that.                                 01:44
 7        Q.    When you say you would send            01:44
 8   thoughts over on behalf of Jay, would that        01:44
 9   be from your e-mail account or his e-mail         01:44
10   account?                                          01:44
11        A.    My e-mail.                             01:44
12        Q.    Did you ever send e-mails from         01:44
13   Jay Justice's account?                            01:44
14        A.    No.                                    01:44
15        Q.    Did anybody else ever send             01:44
16   e-mails on behalf of Jay Justice from Jay         01:44
17   Justice's account?                                01:44
18        A.    I don't know.                          01:44
19        Q.    When did the negotiations              01:44
20   concern the Amended Agreement begin?              01:44
21        A.    I don't remember.  Like,               01:44
22   specifically, but there were -- there were        01:44
23   kind of ongoing conversations because the         01:45
24   premiums weren't being paid and the, you          01:45
25   know, the letter of credit didn't happen          01:45
```

```
 1              STEPHEN W. BALL                              01:45
 2   in September.  And so I don't remember,                 01:45
 3   like, a specific start date, but it was                 01:45
 4   more of what I recall just being like                   01:45
 5   ongoing communications to address the                   01:45
 6   shortfalls under the original Agreement.                01:45
 7       Q.    Okay.                                         01:45
 8             MS. BUSSIERE:  Thank you.                     01:45
 9             (Whereupon, Exhibit 7, Document                01:45
10       Bates No. JUSTICE007416, was marked                 01:45
11       for identification.)                                01:45
12   BY MS. BUSSIERE:                                        01:45
13       Q.    Mr. Ball, you've just been                    01:45
14   handed what's been marked as Exhibit 7,                 01:45
15   which bears Bates No. JUSTICE007416.                    01:45
16             Do you recognize this document?               01:46
17       A.    I don't have a specific                       01:46
18   recollection of this document, but, I                   01:46
19   mean, it looks like a fairly typical                    01:46
20   exchange that I would have with Clint                   01:46
21   Diers.                                                  01:46
22       Q.    Right.  You have no reason to                 01:46
23   believe this e-mail exchange did not                    01:46
24   occur, right?                                           01:46
25       A.    That's right.                                 01:46
```

```
 1                STEPHEN W. BALL
 2      A.    Just as additional premiums come              02:26
 3   due, those get added to the definition of              02:26
 4   "New Indebtedness."                                    02:26
 5   BY MS. BUSSIERE:                                       02:26
 6      Q.    Do you recall having any                      02:26
 7   discussions with Lexon about this                      02:26
 8   provision?                                             02:26
 9      A.    No.                                           02:26
10      Q.    Do you recall any discussions                 02:26
11   with Jay Justice about this provision?                 02:26
12      A.    No.                                           02:26
13      Q.    And midway through Page 7                     02:26
14   Paragraph e this paragraph recognizes that             02:27
15   a failure to provide the premium payments              02:27
16   that are provided for in this agreement                02:27
17   would constitute a material breach of the              02:27
18   agreement, right?                                      02:27
19      A.    Yes.                                          02:27
20      Q.    And Governor Justice guaranteed               02:27
21   these obligations as well, right?                      02:27
22      A.    Yes.                                          02:27
23      Q.    Page 8, Paragraph 6, states "A                02:27
24   new Paragraph 15 is added to the Agreement             02:28
25   immediately following Paragraph 14."                   02:28
```

| | | |
|---|---|---|
| 1 | STEPHEN W. BALL | |
| 2 | Q. What prompted that change? | 03:02 |
| 3 | A. As I recall, I mean, I think | 03:02 |
| 4 | Lexon, you know, obviously had -- had a | 03:02 |
| 5 | desire to have the collateral and the | 03:02 |
| 6 | premiums caught up.  But I think during | 03:02 |
| 7 | that time the past due premiums were | 03:02 |
| 8 | important to them.  And so while they were | 03:03 |
| 9 | willing to defer the collateral payments, | 03:03 |
| 10 | they were hoping to get the premium | 03:03 |
| 11 | payments caught up, or at least -- | 03:03 |
| 12 | Q. Were you a part -- oh, I'm | 03:03 |
| 13 | sorry. | 03:03 |
| 14 | A. At least significant payments | 03:03 |
| 15 | toward the premium payments. | 03:03 |
| 16 | Q. Was there a meeting prior to the | 03:03 |
| 17 | parties entering into this agreement | 03:03 |
| 18 | during which the parties discussed the | 03:03 |
| 19 | terms of this agreement? | 03:03 |
| 20 | A. There was either a meeting or a | 03:04 |
| 21 | phone call.  I mean, I remember -- I | 03:04 |
| 22 | remember conversations, but I can't | 03:04 |
| 23 | remember specifically whether it was a | 03:04 |
| 24 | meeting or not. | 03:04 |
| 25 | Q. Do you recall any in-person | 03:04 |

1

2     CERTIFICATE OF SHORTHAND REPORTER

3            NOTARY PUBLIC

4         I, Amanda Gorrono, the officer

5     before whom the foregoing deposition

6     was taken, do hereby certify that the

7     foregoing transcript is a true and

8     correct record of the testimony given;

9     that said testimony was taken by me

10    stenographically and thereafter

11    reduced to typewriting under my

12    direction; and that I am neither

13    counsel for, related to, nor employed

14    by any of the parties to this case and

15    have no interest, financial or

16    otherwise, in its outcome.

17         IN WITNESS WHEREOF, I have

18    hereunto set my hand this 10th day of

19    April, 2024.

20    _____

21

22  AMANDA GORRONO, CLR
    CLR NO:  052005 - 01
23  Notary Public in and for
    The State of New York
24  County of Suffolk
    My Commission No.  01G06041701
25  Expires:  01/07/2027