# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

LEXON INSURANCE COMPANY,

        Plaintiff,

  v.

JAMES C. JUSTICE II,

        Defendant.

Civil Action No. 3:23-cv-00772

Judge Waverly D. Crenshaw, Jr.
Magistrate Judge Barbara D. Holmes

Trial Date: August 20, 2025

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

FINDINGS OF FACT....................................................................................................... 1

I.      The Parties ......................................................................................................... 1

II.     Procedural Background....................................................................................... 1

III.    Lexon Issues Surety Bonds to Justice Companies ............................................. 3

IV.     The Amended Agreement and Defendant's Guaranty......................................... 4

V.      The Term of the Amended Agreement and the Accrual of Premiums ............... 7

CONCLUSIONS OF LAW .............................................................................................. 9

I.      The Amended Agreement and Guaranty are Clear and Unambiguous.............. 9

II.     The Premiums Continue to Accrue until They are Paid in Full........................ 10

III.    The Award of Premiums Due and Owing to Lexon by Defendant................... 15

IV.     The Award of Pre- and Post-Judgment Interest................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Antero Res. Corp. v. Directional One Servs. Inc.*,
   873 S.E.2d 832 (W. Va. 2022) ................................................................................9

*Bruce McDonald Holding Co. v. Addington*,
   825 S.E.2d 779 (W. Va. 2019) ...........................................................................9, 14

*Chesapeake Appalachia v. Hickman*,
   781 S.E.2d 198 (W. Va. 2015) ................................................................................9

*Consol. Lab'ys, Inc. v. Shandon Sci. Co.*,
   413 F.2d 208 (7th Cir. 1969) ...............................................................................13

*Ctr. of Hope Christian Fellowship, Loc., Church of God in Christ v. Wells Fargo
   Bank Nevada, N.A.*,
   781 F. Supp. 2d 1075 (D. Nev. 2011) ..............................................................12, 15

*Elkland Holdings LLC v. Eagle Mining LLC*,
   2015 WL 13037115 (S.D. W. Va. July 29, 2015) ................................................12

*Freeman v. Montessori Sch. of Bowling Green*,
   1994 WL 476025 (Ohio Ct. App. Sept. 2, 1994) ..................................................11

*Hansen-Gier Fam. Tr. of Apr. 22, 2016 v. Haywood*,
   902 S.E.2d 174 (W. Va. 2024) ................................................................................9

*Harbert v. Harrison Cnty. Ct.*,
   39 S.E.2d 177 (W. Va. 1946) ................................................................................13

*Hull Prop. Grp., LLC v. Quarrier St. LLC*,
   915 S.E.2d 11 (W. Va. Ct. App. 2025) ...................................................................9

*Jack Henry & Assocs., Inc. v. BSC, Inc.*,
   487 F. App'x 246 (6th Cir. 2012) .........................................................................17

*M.M. & D.D. Brown v. Western Maryland Ry. Co.*,
   99 S.E. 457 (W. Va. 1919) ...................................................................................11

*McCarthy Bldg. Companies, Inc. v. Mt. Hawley Ins. Co.*,
   2021 WL 8533897 (C.D. Cal. Feb. 24, 2021) ......................................................11

*Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co*,
   867 F.2d 809 (4th Cir. 1989) ...............................................................................12

*Romano v. Greve*,
    724 S.E.2d 331 (W. Va. 2012)..............................................................................13

*Sanchez v. Dep't of Veterans Affs.*,
    949 F.3d 734 (Fed. Cir. 2020)........................................................................12, 15

*TD Auto Fin. LLC v. Reynolds*,
    842 S.E.2d 783 (W. Va. 2020)...........................................................................11

*Toppings v. Rainbow Homes, Inc.*,
    490 S.E.2d 817 (W. Va. 1997).............................................................................9

*Valerino v. Thompson*,
    28 F. Cas. 872 (S.D.N.Y. 1856)......................................................................12, 15

*Vaughan Const. Co. v. Virginian Ry. Co.*,
    103 S.E. 293 (W. Va. 1920)...............................................................................13

*Warrior Oil & Gas, LLC v. Blue Land Servs., LLC*,
    886 S.E.2d 336 (W. Va. 2023)...........................................................................17

**Statutes**

28 U.S.C. § 1961 ...................................................................................................17

W. Va. Code Ann. § 56–6–27 ...............................................................................17

W. Va. Code Ann. § 56-6-31 .................................................................................17

**Rules**

Local Rule 54.01 ......................................................................................................2

**Other Authorities**

Administrative Order re: Determination and Dissemination of the Rate of Interest on
    Judgments and Decrees for the Year 2023, Sup. Ct. of Appeals of W. Va. (Jan. 4, 2023),
    available at https://www.courtswv.gov/sites/default/pubfilesmnt/2023-
    06/interest2023_0.pdf ...................................................................................... 17

Plaintiff Lexon Insurance Company ("Lexon") respectfully submits the following proposed Findings of Fact and Conclusions of Law.[1]

## FINDINGS OF FACT

### I.     The Parties.

1.      Lexon is a Texas corporation with its principal place of business in Mount Juliet, Tennessee. Lexon and its affiliates issue, underwrite, and guarantee surety bonds for companies operating in a wide range of industries like construction, hard rock mining, energy, and financial services. JX 69 ¶ 26.

2.      Defendant James C. Justice, II ("Defendant") is a United States Senator and the former Governor of West Virginia, who owns companies that, along with their subsidiaries and affiliates, own and operate coal mines in Kentucky, West Virginia, Tennessee, and Virginia. *Id*. ¶ 2. These companies include James C. Justice Companies, Inc., Southern Coal Corporation, Kentucky Fuel Corporation, Justice Family Group, LLC, and Mechel Bluestone, Inc. (the "Justice Companies"), and Beech Creek Coal Corp. ("Beech Creek" and together with the Justice Companies, "Obligors"). *Id.* ¶ 3 n.2.

### II.     Procedural Background.

3.      On July 28, 2023, Lexon commenced this action against Defendant as a result of his failure to perform under a personal guaranty in favor of Lexon dated March 26, 2018, and amended February 4, 2019 (the "Guaranty"). *Id.*

---

[1] Lexon also refers the Court to its pre-trial brief ordered by the Court and filed on July 28, 2025. (ECF 94.)

1

4. Through the Guaranty, Defendant guaranteed the payment of tens of millions of dollars owed to Lexon by Obligors pursuant to an Agreement dated March 26, 2018 (the "Original Agreement"), as amended February 4, 2019 (the "Amended Agreement"). JX 17 (amending JX 2).

5. Lexon moved for summary judgment on all counts in its Complaint on August 1, 2024. ECF 52–56.

6. On December 3, 2024, this Court granted Lexon's motion for summary judgment on all claims asserted in the Complaint, finding Defendant liable on Count I for breaching his contractual commitments under the Guaranty. ECF 68 at 8–14, 40. The Court concluded that, as a result of said breach, Defendant is required to pay Lexon a minimum of $14,250,000 in collateral and $3,538,400.75 in outstanding premiums that were due but unpaid as of February 4, 2019. *Id.* at 17–21.

7. In granting summary judgment to Lexon, this Court also found that Lexon is entitled to recover from Defendant "additional [unpaid] premiums that became due during the Amended Agreement's term" under Count I. *Id.* at 19.

8. In granting summary judgment to Lexon, this Court also found that Defendant is liable under Counts II and III of the Complaint, which seek recovery of Lexon's attorney's fees and other costs to enforce the Guaranty and for indemnification.[2] *Id.* at 40.

9. This case proceeded to a bench trial on August 20, 2025. The two issues before this Court at trial were: (i) the period of time after February 4, 2019 during which additional premiums have accrued pursuant to the Amended Agreement underlying the Guaranty; and (ii) the amount of such premiums.

---

[2] These damages will be determined following trial through the process set forth in Local Rule 54.01. *See* ECF 89 (granting Joint Motion Regarding Scope of Issues for Trial (ECF 87)).

### III.  **Lexon Issues Surety Bonds to Justice Companies**.

10.     Since 2009, Lexon issued more than $100 million in surety bonds to the Justice Companies. JX 69 ¶ 7. These surety bonds guarantee the performance of reclamation and other obligations imposed on the Justice Companies by various state and federal regulators to obtain the permits authorizing their coal mining operations. *Id.*

11.     As surety, Lexon issues bonds to a principal (*i.e.*, coal mine operator) to secure obligations (*i.e.*, pursuant to a permit to conduct mining operations) that the principal owes to an obligee (*i.e.*, state regulator that issued the permit). ECF 56 ¶ 3. The bond guarantees the performance of the principal's obligations to the obligee. *Id.* Thus, if the principal fails to perform its obligations to the obligee, Lexon is responsible for the performance of those obligations under certain circumstances. *Id.*

12.     Once Lexon issues a surety bond, Lexon remains obligated to the regulator for the performance covered by the bond until the surety bond is released or discharged, or replaced by another surety's bond. *See, e.g.*, JX 4 ¶ 3 at 11. Notwithstanding Obligors' failure to pay premiums and collateral, Lexon remains obligated on the over $100 million in surety bonds it has issued to the Justice Companies and Beech Creek.

13.     In exchange for these surety bonds, Obligors promised: (1) to pay recurring premiums until each surety bond is released; and (2) to post collateral required by Lexon to secure Lexon's significant financial risk under the surety bonds. ECF 68 at 1–2.

14.     The premium payment obligation for each surety bond is spelled out in clear and careful detail in the General Agreement of Indemnity ("GAI") executed at the time Lexon issues the surety bond. An example of this language is found in the GAI dated March 30, 2016 between Lexon and one of the Justice Companies, Southern Coal Company, which states as follows:

The Indemnitor(s) [the Justice Companies] shall pay the premiums and renewal premiums for each Bond issued hereunder, inclusive of initial, fully earned, premium and all subsequent renewals, extensions or modifications until the Surety [Lexon] has received written legal evidence, satisfactory to the Surety, of its discharge from any and all such Bond(s) and all liability related thereto[.]

JX 4 ¶ 3 at 11.

15.     The GAIs also outline the collateral obligation applicable to each surety bond:

If Surety establishes a reserve account, the Indemnitor(s) [the Justice Companies] shall immediately upon demand provide Surety with collateral acceptable to Surety equal to the reserve set and any future reserve increases, whether or not Surety has yet made a payment or incurred a loss, or at any given point that Surety determines collateralization is required for any reason. Surety may retain the collateral until all actual and potential claims and losses of any type against the Bond(s) are exonerated and all loss is fully reimbursed[.]

*Id*. ¶ 5 at 11.

## IV.     **The Amended Agreement and Defendant's Guaranty**.

16.     When the Justice Companies failed to stay current on their collateral and premium obligations, the parties entered into two agreements: (1) the Original Agreement, dated March 26, 2018; and (2) the Amended Agreement, dated February 4, 2019. JX 3; JX 18. These agreements were, in effect, installment payment plans designed to bring the accounts current over time by paying off past-due premiums and replenishing collateral. ECF 68 at 2–3.

17.     Under the Original Agreement, Lexon agreed to release collateral it held in exchange for Obligors' promise to pay (1) $5 million in new collateral within six months of the Original Agreement's effective date of March 26, 2018 and (2) $3,000,000 in then-past due premium payments (owed under the GAIs) within two months of the Original Agreement's effective date. JX 3 ¶¶ 1–3.

18.     To induce Lexon to agree to the Original Agreement's payment plan and to "diligently pursue the liquidation/release of [old] Collateral," Defendant agreed to execute the

original Guaranty which promised payment of the underlying obligations if Obligors defaulted. *Id.* ¶¶ 1, 4.

19.     Obligors did not make the premium and collateral payments required under the Original Agreement, nor did Defendant satisfy these obligations under the original Guaranty. Obligors therefore breached the terms of the Original Agreement, and Defendant "breached the terms of the [original] Guaranty." JX 18, Recitals at 1–2. Thereafter, the parties executed the Amended Agreement. *Id.* Pursuant to the Amended Agreement, Lexon agreed to a "revised payment plan," ECF 68 at 3, and to issue new bonds to Obligors, and Obligors agreed to catch up on premium payments, pay collateral, and secure Defendant's amended personal Guaranty. *See* JX 18, Recitals at 1–2.

20.     Under the Amended Agreement, Obligors were required to (i) "deliver to Lexon new collateral in the total sum of Twenty Million U.S. dollars ($20,000,000.00) by April 1, 2021 (the 'New Collateral')"[3] and (ii) "pay Lexon the sum of Two Hundred Thousand U.S. dollars ($200,000) per month until the Total Indebtedness is paid in full."[4]

21.     Total Indebtedness refers to the premiums owed to Lexon, and is defined in the Amended Agreement as the sum of the outstanding premiums due to Lexon as of March 26, 2018 (the "Remaining Indebtedness") and premiums that accrued between March 26, 2018 and February 4, 2019 *and that continue to accrue* for the term of the Amended Agreement ("New Indebtedness"). JX 18 ¶ 3 at 5–7. Together, these three terms—Total Indebtedness, Remaining

---

[3] *See* JX 18 ¶ 2 at 2–5; *see also* JX 17, Recitals ¶ (i) (defining this obligation as the New Collateral Replenishment Obligation).

[4] *See* JX 18 ¶ 3(b)(i) (emphasis added); *see also* JX 17, Recitals ¶ (ii) (defining this obligation as the New Indebtedness Payment Obligation).

Indebtedness, and New Indebtedness—comprise the "New Indebtedness Payment Obligation" defined in the Guaranty. *See infra* ¶23. Specifically, the Amended Agreement accounts for premiums as follows:

    a. Remaining Indebtedness is a stipulated amount: $1,025,000.00. JX 18 ¶ 3 at 5–7.

    b. New Indebtedness as of February 4, 2019, when the Amended Agreement was signed, is also a stipulated amount: $2,513,400.75. *Id.*

    c. New Indebtedness that accrues after February 4, 2019. *Id.* ¶ 3(c).

    d. Total Indebtedness is equal to the Remaining Indebtedness plus the New Indebtedness, including the additional premium that accrues as New Indebtedness. *Id.* ¶¶ 3, 3(c).

22. To induce Lexon into entering the Amended Agreement, Defendant amended the original Guaranty. JX 17.

23. Under the Guaranty, Defendant "absolutely, unconditionally and irrevocably guarantee[d]," the payment and punctual performance of (i) the New Collateral, defined by the Guaranty as the "New Collateral Replenishment Obligation" and (ii) "the Total Indebtedness (including any new premiums becoming due during the term of the Amended [] Agreement)," defined by the Guaranty as the New Indebtedness Payment Obligation (together with the New Collateral Replenishment Obligation, the "Obligations"). JX 17, Recitals ¶ (ii), ¶ 1.

24. The Guaranty provides that, if Obligors fail to pay any or all of their Obligations under the Amended Agreement, Defendant "shall" pay to Lexon "the entire amount" of the Obligations unpaid by Obligors within three business days of receipt of Lexon's written demand "as if such amount constituted the direct and primary obligation of [Defendant]." *Id.* ¶¶ 1(a)–(b).

25. Likewise, the Guaranty also provides that, if Obligors "fail to pay any amounts due under any GAI," Defendant "shall" pay to Lexon "the entire amount of the amount remaining

6

unpaid" by Obligors within ten business days of receipt of Lexon's written demand "as if such amount constituted the direct and primary obligation of [Defendant]." *Id.* ¶ 1(c).

## V.    <u>The Term of the Amended Agreement and the Accrual of Premiums</u>.

26.    The Amended Agreement states that Obligors "agree to pay Lexon the sum of Two Hundred Thousand U.S. dollars ($200,000.00) per month until the Total Indebtedness is paid in full." JX 18 ¶ 3(b)(i).

27.    Instead of setting a fixed date or deadline by which Obligors must satisfy the Total Indebtedness, the Amended Agreement requires Obligors to make these payments "***until the Total Indebtedness is paid in full***." *Id*. (emphasis added).

28.    The Amended Agreement defines the Total Indebtedness as the sum of the Remaining Indebtedness and the New Indebtedness, and provides that the New Indebtedness— and in turn, Total Indebtedness—increases as premiums continue to accrue for the term of the Amended Agreement. *Id.* ¶ 3(c). Specifically, the Amended Agreement provides:

> The Collateral Justice Companies and Beech Creek recognize that ***additional amounts for premium*** may become due during the term of this Agreement and they hereby agree that the New Indebtedness shall be increased in like amount (e.g., if new premium is due on March 2, 2019 in the amount of $10,000.00, the New Indebtedness is increased by $10,000.00). Additional amounts for premiums under this sub-paragraph are those premiums that are sixty (60) days or more past due.

*Id*. (emphasis added).

29.    Once premiums become 60-days past due, "additional amounts for premium" convert to New Indebtedness. *Id.* Any New Indebtedness increases the balance of Total Indebtedness. *Id*. ¶ 3 at 5.

30.    Notably, it was Obligors who proposed the timeline under which additional amounts of unpaid premiums convert to New Indebtedness. JX 15 at 4 (January 30, 2019 email

7

attachment reflecting Obligors' proposal that "[f]or purposes of what is current on premium payments, 60 days will be deemed current on premium payments").

31.     Indeed, the parties' email negotiations as far back as January 2019 also reflect a mutual understanding that monthly premium payments due under the Amended Agreement would continue to accrue "until all premiums are current." *Id.*

32.     Consistent with the Amended Agreement, the Guaranty states that Obligors "shall pay to [Lexon] in cash or its equivalent the sum of two hundred thousand U.S. dollars ($200,000.00) per month, due and payable commencing on February 28, 2019 and on the last day of each month thereafter, ***until the Total Indebtedness (including any new premiums becoming due during the term of the Amended [] Agreement) is paid in full[.]***" JX 17, Recitals ¶ (ii) (emphasis added).

33.     Consistent with the Amended Agreement, the Guaranty expressly provides that Defendant's obligations under the Guaranty are "continuing in nature and appl[y] until the . . . payment and satisfaction in full of all of the Obligations." *Id.* ¶ 5(a) (emphasis added).

34.     Nothing in the record evidences any discussion or agreement among the parties for a fixed end-date for the conversion of newly accrued and past-due premiums into New Indebtedness.

35.     The Justice Companies' General Counsel testified in his deposition that, pursuant to the terms of the Amended Agreement, "[j]ust as additional premiums come due those get added to the definition of 'New Indebtedness.'" ECF 94, Ex. 10 at 162:2–4.

36.     Obligors have not satisfied the New Collateral Replenishment Obligation or paid the Total Indebtedness "in full." JX 18 ¶ 3(b)(i); JX 17 ¶ 5(a).

## CONCLUSIONS OF LAW

### I.   The Amended Agreement and Guaranty are Clear and Unambiguous.

37.   The Amended Agreement and the Guaranty are governed by West Virginia law. *See, e.g.*, ECF 68 at 9 ("The parties agree that the contracts between them, including the Guaranty, are governed by West Virginia law.").

38.   Under West Virginia law, contracts are enforced according to the parties' intent, as expressed in the plain and unambiguous written terms of the contract. *Hansen-Gier Fam. Tr. of Apr. 22, 2016 v. Haywood*, 902 S.E.2d 174, 180 (W. Va. 2024).

39.   The function of the courts is to interpret and enforce contracts; not to "extend or limit" them. *Toppings v. Rainbow Homes, Inc.*, 490 S.E.2d 817, 822 (W. Va. 1997); *see also Hull Prop. Grp., LLC v. Quarrier St. LLC*, 915 S.E.2d 11, 18 (W. Va. Ct. App. 2025) ("It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.") (citation omitted).

40.   Contracts "should be [] construed, if possible, as to give meaning to every word, phrase and clause and also render all its provisions consistent and harmonious." *Antero Res. Corp. v. Directional One Servs. Inc.*, 873 S.E.2d 832, 842 (W. Va. 2022); *see also Chesapeake Appalachia v. Hickman*, 781 S.E.2d 198, 213 (W. Va. 2015) (recognizing "[t]he general state law rule" that contract terms "are not to be construed in a vacuum, but are to be read in their context").

41.   A contract is ambiguous only if its terms, when read together as a whole, are inconsistent or susceptible to multiple reasonable interpretations. *See Bruce McDonald Holding Co. v. Addington*, 825 S.E.2d 779, 785 (W. Va. 2019); *see also Haywood*, 902 S.E.2d at 180 (defining ambiguity as "language reasonably susceptible of two different meanings or language of

9

such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning").

42. Because the Amended Agreement and Guaranty are clear and unambiguous, the parties must abide by their terms. In the alternative, to the extent there is ambiguity, parol evidence demonstrates the parties' intent that the Amended Agreement (and, thus, the Guaranty) does not terminate until all Obligations are paid in full.

## II. **The Premiums Continue to Accrue until They are Paid in Full**.

43. This Court finds that, under the plain and unambiguous provisions of the Amended Agreement and Guaranty, the Obligations continue, as do Defendant's obligations under the Guaranty, "until the New Collateral Replenishment Obligation and New Indebtedness Payment Obligation are paid off completely." ECF 68 at 19 n.12; *see also, e.g.,* JX 17, Recitals ¶ (ii) (providing that Obligors "shall pay to [Lexon] in cash or its equivalent the sum of two hundred thousand U.S. dollars ($200,000.00) per month, due and payable commencing on February 28, 2019 and on the last day of each month thereafter, until the Total Indebtedness (including any new premiums becoming due during the term of the Amended Underlying Agreement) is paid in full[.]"); JX 18 ¶ 3(b)(i) (requiring Obligors to "pay Lexon the sum of Two Hundred Thousand U.S. dollars ($200,000) per month until the Total Indebtedness is paid in full"); *id.* ¶ 3(c) ("recogniz[ing] that additional amounts for premium may become due during the term of this [Amended] Agreement," and … agree[ing] that the New Indebtedness shall be increased in like amount").

44. In this case, Defendant has advocated for a fixed end-date for his obligations under the Guaranty—*e.g.*, "until April 1, 2021, the latest date referenced in the Amended Agreement," or "until Lexon declares the Obligors in default and demands payment from Governor Justice under the Guaranty." ECF 68 at 19 n.12. These alternatives do not align with the plain language of the Amended Agreement.

45. The Amended Agreement and Guaranty should be construed as a single agreement. *See TD Auto Fin. LLC v. Reynolds*, 842 S.E.2d 783, 788 (W. Va. 2020) ("written instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together as one contract or instrument, even though they do not by their terms refer to each other"); JX 18 ¶ 8 (stating that the Guaranty was executed "[c]ontemporaneously" with the Amended Agreement, and "as a condition precedent to any and all obligations of Lexon" under the Amended Agreement); JX 17 ¶ 14 (the "Guaranty, together with the Amended [] Agreement, constitutes the sole and entire agreement of the parties thereto with respect to the subject matter hereof").

46. The plain and unambiguous language of the Amended Agreement and Guaranty reflects the parties' intent that Obligors' Obligations thereunder (and, thus, Defendant's obligations under the Guaranty) continue "until the Total Indebtedness [New Indebtedness Payment Obligation] is paid in full" and the New Collateral Replenishment Obligation is paid in full. JX 18 ¶¶ 2, 3(b)(i); *see M.M. & D.D. Brown v. Western Maryland Ry. Co.*, 99 S.E. 457, 459 (W. Va. 1919) ("The normal end or termination of every contract is performance in accordance with the agreement, and such a consummation should be the presumptive one."); *Freeman v. Montessori Sch. of Bowling Green*, 1994 WL 476025, at *2 (Ohio Ct. App. Sept. 2, 1994) ("A binding contract continues in effect until [] there [is] a full performance of the obligation therein set forth."); *McCarthy Bldg. Companies, Inc. v. Mt. Hawley Ins. Co.*, 2021 WL 8533897, at *4 (C.D. Cal. Feb. 24, 2021) (concluding that the plain meaning of the term "life of this Agreement" was "until performance by both parties is complete").

47. The Guaranty's stated duration—*i.e.*, that the Guaranty remains in effect until both Obligations are paid in full—would have little meaning if the Amended Agreement terminated

prior to Obligors' satisfaction of the Obligations. *See* JX 17 ¶ 5(a). Therefore, the only reasonable interpretation of the Amended Agreement's term is that it remains in effect until the Obligations are fully satisfied.

48.     This interpretation is consistent with the stated purpose of the Amended Agreement and Guaranty. Obligors' Obligations to pay collateral and premium arise from the GAIs, which continue until the bond is released or discharged. *See, e.g.*, JX 4 ¶¶ 3, 5 at 11. The purpose of the Amended Agreement and Guaranty was to provide a payment plan whereby Obligors and Defendant would bring those collateral and premium accounts current. ECF 68 at 3. Indeed, like the GAIs, Defendant's obligations under the Guaranty "appl[y] *until the . . . payment and satisfaction in full of all of the Obligations*." JX 17 ¶ 5(a) (emphasis added). It follows that the Amended Agreement does not terminate until Obligors have satisfied their Obligations thereunder. *See, e.g.*, *Sanchez v. Dep't of Veterans Affs.*, 949 F.3d 734, 737 (Fed. Cir. 2020) ("[I]f no date is fixed by the contract for its termination, the agreement remains in force until its purpose is accomplished[.]"); *Ctr. of Hope Christian Fellowship, Loc., Church of God in Christ v. Wells Fargo Bank Nevada, N.A.*, 781 F. Supp. 2d 1075, 1080 (D. Nev. 2011) (recognizing that "contracts to repay debt . . . terminate only when the debt is satisfied"); *Valerino v. Thompson*, 28 F. Cas. 872, 872 (S.D.N.Y. 1856) (explaining that "indebtment is not extinguished until the entire debt is satisfied").

49.     The parties engaged in extensive negotiations prior to the execution of the Amended Agreement.[5] In addition to the clear contractual language that resulted from those

---

[5] *See Elkland Holdings LLC v. Eagle Mining LLC*, 2015 WL 13037115, at *15 (S.D. W. Va. July 29, 2015) (principle of contra proferentum does not apply to a contract that was negotiated between sophisticated parties and where both parties had the opportunity to negotiate); *see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co*, 867 F.2d 809, 814 (4th Cir. 1989) (attaching "no

negotiations, the fact that the parties did not include a fixed end-date in the Amended Agreement (notwithstanding that the contract has multiple specific payment due dates) evidences that the parties did not intend for the Amended Agreement to terminate on a specific date.[6] *See also Harbert v. Harrison Cnty. Ct.*, 39 S.E.2d 177, 186 (W. Va. 1946) (explaining that "the well recognized and long established principle of interpretation of written instruments that the express mention of one thing implies the exclusion of another, *expressio unius est exclusio alterius*, . . . extends to all instruments requiring judicial construction," including contracts); *see also Consol. Lab'ys, Inc. v. Shandon Sci. Co.*, 413 F.2d 208, 212 (7th Cir. 1969) ("[A] contract which is terminable upon the occurrence of an event is . . . to be enforced according to its terms and the reasonable implication thereof."). And, given that the Amended Agreement was intended to address Obligors' checkered payment history, it would be commercially unreasonable to conclude that the parties intended to end the Amended Agreement on a fixed end-date when Obligors were supposed to (but did not) satisfy their New Collateral Replenishment Obligation. *See* JX 18, Recitals at 1–2.

50.    The parties' conduct following the signing of the Amended Agreement also evidences that they understood premiums would continue to accrue under the Amended

---

significance" to which party drafted the arbitration language because the contract was negotiated at arms' length through "able and experienced counsel" on behalf of "sophisticated" parties).

[6] Jay Justice, the President of each of the Justice Companies and Defendant's son, testified in his deposition "that there is premium accruing" pursuant to the terms of the Amended Agreement. ECF 94, Ex. 14 at 99:4–5. Defendant "cannot now advocate a different interpretation of the parties' agreement." *See Romano v. Greve*, 724 S.E.2d 331, 343 (W. Va. 2012) (concluding that, "to the extent that [the plaintiff] previously has contributed to the promulgation of these standards and has acquiesced in their application, he cannot now advocate a different interpretation of the parties' agreement"); *see also Vaughan Const. Co. v. Virginian Ry. Co.*, 103 S.E. 293, 296 (W. Va. 1920) (finding that contractors' acquiescence by acceptance without question of monthly estimates of chief engineer precluded contractors "from afterwards putting a different construction on the contract").

Agreement until those premiums are paid in full. *See Bruce McDonald Holding Co. v. Addington, Inc.*, 825 S.E.2d 779, 785 (W. Va. 2019) (recognizing that the parties' "practical interpretation . . . as shown by their acts and conduct, is entitled to great, if not controlling, weight") (citation omitted).

51.     Specifically, the Justice Companies requested multiple extensions, and understood that, subject to these requests, Lexon's principal concern was "get[ting] the premium caught up," ECF 94, Ex. 10 at 183:3–15, and Lexon made clear that it would "not agree to suspend the premium payments" and that "[s]uspension of the payments not only stops progress towards reducing overdue amounts but actually adds to the balance as renewal premiums become due." JX 36 at 2. There is no evidence that either Obligors or Defendant challenged Lexon's statements regarding continued accrual of premium under the Amended Agreement and Guaranty.

52.     In fact, upon receipt of Lexon's July 2023 notice of default and demand under the Guaranty, *see* JX 66, the Justice Companies' General Counsel, Stephen Ball conveyed Defendant's and the Justice Companies' "understand[ing] [that] there are premiums continuing to accrue on the bonds." JX 67 at 3. Moreover, Defendant's Response to Plaintiff's Statement of Undisputed Material Facts did not dispute Lexon's statements that "[t]he Amended Agreement provides for the Obligors to pay Lexon $200,000 per month 'until the Total Indebtedness is paid in full (the 'Premium Payments')'" and "[t]he Amended Agreement further provides that 'additional amounts for premium may become due during the term of this Agreement' and that the amount of premiums constituting Total Indebtedness 'shall be increased in like amount.'" ECF 58 ¶¶ 8–9.

53.     In addition, Obligors affirmatively asked to have additional premiums that became due following execution of the Amended Agreement convert to "New Indebtedness" once they were 60 days past due, thereby acknowledging the continued accrual of premiums subject to the

Amended Agreement and, thus, the Guaranty. *See* JX 15 at 4 (reflecting the Obligors' proposal that "[f]or purposes of what is current on premium payments, 60 days will be deemed current on premium payments").

54.     Therefore, this Court finds that the Amended Agreement does not terminate until Obligors have paid both collateral and premium Obligations in full—*i.e.*, until Lexon receives $20 million in collateral and payment of all premiums at least 60-days past due. *See, e.g., Sanchez v. Dep't of Veterans Affs.*, 949 F.3d 734, 737 (Fed. Cir. 2020) ("[I]f no date is fixed by the contract for its termination, the agreement remains in force until its purpose is accomplished[.]"); *Ctr. of Hope Christian Fellowship, Loc., Church of God in Christ v. Wells Fargo Bank Nevada, N.A.*, 781 F. Supp. 2d 1075, 1080 (D. Nev. 2011) (recognizing that "contracts to repay debt . . . terminate only when the debt is satisfied"); *Valerino v. Thompson*, 28 F. Cas. 872, 872 (S.D.N.Y. 1856) (explaining that "indebtment is not extinguished until the entire debt is satisfied").

### III.     The Award of Premiums Due and Owing to Lexon by Defendant.

55.     With its decision on summary judgment in Lexon's favor, this Court has already awarded Lexon the following amounts: (1) New Collateral Replenishment Obligation: $14,250,000.00; (2) Remaining Indebtedness: $1,025.000.00; and (3) New Indebtedness accrued between the execution of Original Agreement and Amended Agreement: $2,513.400.75.

56.     Thus, as to the New Indebtedness Payment Obligation, this Court found on summary judgment that Lexon is entitled to at least $3,538,400.75 (Remaining Indebtedness plus New Indebtedness accrued between the execution of Original Agreement and Amended Agreement). ECF 68 at 19. According to this Court's summary judgment decision, that amount is owed to Lexon "***plus additional premiums that became due during the Amended Agreement's term, minus any payments made of the New Indebtedness Payment Obligation by the Obligors***." *Id.* (emphasis added).

15

57.     As demonstrated by Lexon at trial and confirmed by this Court's review of the Premium Tracker, other evidence, and testimony, the additional New Indebtedness that has accrued during the term of the Amended Agreement and is owed by Defendant—after accounting for the $3,538,400.75 already awarded by this Court—totals $6,850,690.06.

58.     The Court's overall determination of outstanding premiums was made by adding $3,538,400.75 (the Total Indebtedness amount this Court already awarded) plus $6,850,690.06 (the amount of additional New Indebtedness that Lexon proved at trial), which equals $10,389,090.81.

59.     Therefore, this Court determines the amount due to Lexon by Defendant under the Guaranty by adding $10,389.090.81 (New Indebtedness Payment Obligation) plus $14,250,000.00 (New Collateral Replenishment Obligation), which equals $24,639.090.81.

60.     Defendant is responsible for that unpaid amount in its entirety under the Guaranty. *Supra* ¶ 24 ("The Guaranty provides that, if Obligors fail to pay any or all of their Obligations under the Amended Agreement, Defendant 'shall' pay to Lexon 'the entire amount' of the Obligations unpaid by Obligors within three business days of receipt of Lexon's written demand 'as if such amount constituted the direct and primary obligation of [Defendant].'") (quoting JX 17 ¶¶ 1(a)–(b)); *see also supra* ¶ 25 ("The Guaranty also provides, if Obligors 'fail to pay any amounts due under any GAI,' Defendant "shall" pay to Lexon "the entire amount of the amount remaining unpaid' by Obligors within ten business days of receipt of Lexon's written demand 'as if such amount constituted the direct and primary obligation of [Defendant].'") (quoting JX 17 ¶ 1(c)).

### IV.     <u>The Award of Pre- and Post-Judgment Interest</u>.

61.     This Court also found that Lexon is entitled to pre- and post-judgment interest on damages owed to Lexon under Count I. ECF 68 at 22 n.15.

62. West Virginia law authorizes pre-judgment interest in breach of contract actions even if the case was not tried before a jury. *See* W. Va. Code Ann. § 56–6–27 ("The jury, in any action founded on contract, may allow interest on the principal due."); *see also Warrior Oil & Gas, LLC v. Blue Land Servs., LLC*, 886 S.E.2d 336, 345 (W. Va. 2023) (rejecting petitioner's argument that the lower court could not award prejudgment interest because the case was not tried before a jury). The applicable interest rate for pre-judgment interest in West Virginia is equal to "7.00% per year," [7] and Lexon is entitled to pre-judgment interest at that annual rate. *See* W. Va. Code Ann. §§ 56–6–27 and 56-6-31.

63. Under federal law, which controls post-judgment interest, the applicable rate is 5% per annum. 28 U.S.C. § 1961; *see also Jack Henry & Assocs., Inc. v. BSC, Inc.*, 487 F. App'x 246, 260 (6th Cir. 2012) (recognizing the default rule that, "federal law [*i.e.*, § 1961] controls post-judgment interest even while state law governs awards of prejudgment interest").

64. As explained above, Lexon is entitled to an award of damages equal to $24,639,090.81. Accordingly, Lexon is entitled to 7% in pre-judgment interest on the principal amount of $24,639,090.81, running from July 27, 2023 to at least August 20, 2025, which totals $3,562,880.04.

65. Lexon is also entitled to post-judgment interest in an amount to be determined at a later time.

---

[7] *See also* Administrative Order re: Determination and Dissemination of the Rate of Interest on Judgments and Decrees for the Year 2023, Sup. Ct. of Appeals of W. Va. (Jan. 4, 2023), available at https://www.courtswv.gov/sites/default/pubfilesmnt/2023-06/interest2023_0.pdf

Dated: August 11, 2025

Respectfully submitted,

*/s/ W. Brantley Phillips, Jr.*
W. Brantley Phillips, Jr.
Garrah Carter-Mason
**BASS, BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, TN 37203
(615) 742-6200
bphillips@bassberry.com
garrah.cartermason@bassberry.com

Jason Halper
Sara Brauerman
Timbre Shriver
**VINSON & ELKINS LLP**
1114 Avenue of the Americas
New York, New York 10036
212.237.0000
jhalper@velaw.com
sbrauerman@velaw.com
tshriver@velaw.com

*Attorneys for Plaintiff Lexon Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 11, 2025, the foregoing document was filed via the Court's ECF system, which will send a notice of electronic filing to all ECF-registered counsel of record.

*/s/ W. Brantley Phillips, Jr.*