

|  |  |
|---|---|
| **From:** | Diers, Clinton |
| **Sent:** | Friday, March 23, 2018 1:55 PM EDT |
| **To:** | Jay Justice |
| **CC:** | David Campbell |
| **Subject:** | FW: Justice Coal |
| **Attachments:** | SJDOCS-#7976397-v2-Lexon_Justice_Companies_Agreement_-_MF_Revisions.docx |

Jay, attached are the documents as prepared by Lexon's attorney covering the collateral release and return as well as the equipment for premium agreement and guarantees. Please review, and with your acceptance we'll be in position to move forward.

Thank you

Clint

Clint J. Diers, SVP - Surety
**Marsh & McLennan Agency LLC**
4900 Libbie Mill East Boulevard, Suite 100, Richmond, VA 23230
804 915 5624 | Mobile 804 363 1171 | Fax 804 648 0655

clint.diers@marshmma.com

---

**From:** Bruce L. Maas [mailto:Bmaas@HarrisBeach.com]
**Sent:** Friday, March 23, 2018 1:27 PM
**To:** Diers, Clinton
**Cc:** David Campbell; michael.funk@steptoe-johnson.com
**Subject:** Justice Coal

Clint-attached is an Agreement setting forth the understanding between Lexon and Justice relative to release/replenishment of collateral and payment of the current indebtedness through sale of certain equipment. In separate emails, I will send you Exhibits A and C to the Agreement. Exhibit B (the Letter of Credit Form) will be sent on Monday. I will also send you a red-line copy of the Guarantee prepared by Justice which reflects the changes made by our local counsel. These documents may be forwarded to Justice for review and comment. Let me know if you have any questions.

**Bruce L. Maas**
**Partner**

# HARRIS BEACH PLLC

ATTORNEYS AT LAW

99 Garnsey Road
Pittsford, NY 14534
585.419.8650   Direct
585.419.8811   Fax
585.419.8800   Main

**Website**   |   **Bio**   |   **Add to Contacts**

p r a c t i c e G R E E N
Save a tree. Read, don't print, emails.

**Statement of Confidentiality**

This electronic message may contain privileged or confidential information. If you are not the intended recipient of this e-mail, please delete it from your system and advise the sender.

This e-mail transmission and any attachments that accompany it may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law and is intended solely for the use of the individual(s) to whom it was intended to be addressed. If you have received this e-mail by mistake, or you are not the intended recipient, any disclosure, dissemination, distribution, copying or other use or retention of this communication or its substance is prohibited. If you have received this communication in error, please immediately reply to the author via e-mail that you received this message by mistake and also permanently delete the original and all copies of this e-mail and any attachments from your computer.

Please note that coverage cannot be bound or altered by sending an email. You must speak with or receive written confirmation from a licensed representative of our firm to put coverage in force or make changes to your existing program. Thank you.

**********************************************************************
This e-mail, including any attachments that accompany it, may contain
information that is confidential or privileged. This e-mail is
intended solely for the use of the individual(s) to whom it was intended to be
addressed. If you have received this e-mail and are not an intended recipient,
any disclosure, distribution, copying or other use or
retention of this email or information contained within it are prohibited.
If you have received this email in error, please immediately
reply to the sender via e-mail and also permanently
delete all copies of the original message together with any of its attachments
from your computer or device.
**********************************************************************

# AGREEMENT

**THIS AGREEMENT** is made and entered into as of the ____ day of April, 2018 (the "Effective Date") by and between James C. Justice Companies, Inc., Southern Coal Corporation, Kentucky Fuel Corporation, Justice Family Group, LLC and Mechel Bluestone, Inc. (collectively the "Collateral Justice Companies"), Beech Creek Coal Corp. ("Beech Creek"), James C. Justice, II ("Justice II") and Lexon Insurance Company ("Lexon").

**WHEREAS**, Lexon and/or its affiliates have previously executed bonds ("Bonds") on behalf of the Collateral Justice Companies and/or their operating affiliates including, but not limited to, Kentucky Fuel Corporation, Tams Management, Inc., Justice Low Seam Mining, Inc., A&G Coal Corporation, Virginia Fuel Corporation, Premium Coal Company Inc., Sequoia Energy, LLC, Infinity Energy, LLC, Four Star Resources, LLC and Alabama Carbon, LLC as Principal (the "Principals") and various governmental agencies as obligees, and

**WHEREAS**, the Collateral Justice Companies have previously posted collateral with Lexon in the form and amounts set forth on **Exhibit A** attached hereto and made a part hereof as if set forth in full (the "Collateral"). The Collateral is held as security to indemnify Lexon from any loss, cost or expense it may incur as the result of executing the aforesaid Bonds, and

**WHEREAS**, the Collateral Justice Companies and/or the Principals currently owe premium to Lexon in the amount of _____ DOLLARS, ($ _____), (the "Indebtedness"), and

**WHEREAS**, the parties have reached an agreement concerning the release of the Collateral to the Collateral Justice Companies and the Collateral Justice Companies' subsequent replenishment of the Collateral; and have further reached agreement on payment of the amount owed for premium, all as more specifically set forth below.

**NOW, THEREFORE**, for and in consideration of the terms and conditions set forth below and other valuable consideration herein acknowledged as received, the parties agree as follows.

1) Immediately upon execution of this Agreement, Lexon shall diligently pursue the liquidation/release of the Collateral and deliver the Collateral to the respective Collateral Justice Companies.

2) In substitution for the Collateral released, the Collateral Justice Companies agree to post new collateral with value of $5,000,000.00 by providing Lexon with an Irrevocable Letter of Credit ("ILOC"), in the form attached hereto as **Exhibit B,** or such other form of collateral acceptable in all respects including, without limitation, type, form, and valuation, to Lexon in its sole discretion (the "New Collateral"). The New Collateral shall be delivered to Lexon no later than the six-month anniversary of the Effective Date of this Agreement. If the Collateral Justice Companies fail to provide New Collateral with value of $5,000,000 and acceptable to Lexon by close of business on the six-month anniversary of the Effective Date of this Agreement, the Collateral Justice Companies shall immediately, without notice or demand from Lexon, pay to Lexon in cash or its equivalent the amount of $5,000,000 less the value, as agreed by Lexon, of any New Collateral provided prior to such deadline that is acceptable to Lexon (said amount being the "New Collateral Shortfall"), which amount shall be held by Lexon as New Collateral. The above obligations of the Collateral Justice Companies are joint and several. As further set forth below, the obligations to provide the New Collateral and pay the New Collateral Shortfall will be personally guaranteed by Justice II.

3) Beech Creek is the current owner of the equipment/machinery ("Equipment") set forth on **Exhibit C**, attached hereto and made a part hereof as if set forth in full. Beech Creek

hereby warrants and represents that it has good and marketable title to the Equipment, free and clear of all liens and encumbrances. Beech Creek further represents that the Equipment's approximate value is equal to the amount of the Indebtedness. As detailed below, Beech Creek agrees to sell the Equipment with the proceeds to be used to reduce the Indebtedness, as detailed below:

a) Upon execution of this Agreement by all parties, Beech Creek shall transfer title/ownership of the Equipment to Lexon by a duly executed Bill of Sale and Assignment in the form of the attached **Exhibit D**. Beech Creek and each of the Collateral Justice Companies hereby irrevocably authorize Lexon to prepare, execute, deliver, and/or file financing statements or other instruments to reflect Lexon's ownership of the Equipment and/or its bailment of the Equipment to Beech Creek.

b) Despite the transfer of ownership to Lexon, Beech Creek shall continue to provide insurance coverage for the Equipment and the applicable policies shall name Lexon as an additional insured.

c) Prior to or at the time of execution of this Agreement, Beech Creek shall begin marketing the Equipment for sale. The terms of all sales (including price) shall be subject to Lexon's approval. At the time of any sale, Lexon shall transfer ownership of the sold Equipment to the Purchaser and the entire sale proceeds shall be given to Lexon. Beech Creek shall bear any and all costs of sale.

d) In the event the Indebtedness is not paid in full within two (2) months of the Effective Date, either through the sale of the Equipment or otherwise, then

3

276257 3341328v2
3/21/2018 3:37 pm

Case 3:23-cv-00077 Document 165-25 Filed 08/29/25 Page 5 of 19 PageID #: 11844

JUSTICE000376

and in such event, the Collateral Justice Companies agree to pay the balance owed Lexon within five (5) business days in cash or its equivalent. Payment of any balance owed shall be personally guaranteed by Justice II as further detailed below.

    e) In the event the proceeds from sale of the Equipment exceed the amount required to fully satisfy the Indebtedness, Lexon shall hold the excess as a credit to be applied toward future obligations of the Collateral Justice Companies with respect to the Bonds, whether premiums or otherwise.

4) Contemporaneously with execution of this Agreement, and as a condition precedent to any and all obligations of Lexon under this Agreement, Justice II shall execute and deliver a Guaranty in the form of the attached **Exhibit E**.

    a. Prior to Justice II transferring to any one or more trusts under which any Justice Party (as such term is defined below) is a beneficiary, whether primary or contingent, any assets with a collective value in excess of $1,000,000, Justice II shall: (i) advise Lexon of the contemplated transfer; (ii) execute, in his capacity as grantor of such trust, a Guaranty substantially in the form of that attached as **Exhibit E** but appropriately revised to reflect the trust as guarantor and the other parties and in all respects acceptable to Lexon (a "Trust Guaranty"); (iii) execute, in his capacity as beneficiary of such trust, if such is the case, and require all other beneficiaries of such trust, whether primary or contingent, to execute in such capacities the Trust Guaranty; (iv) require the trustee or co-trustees of such trust to execute the Trust Guaranty; and (v) deliver the fully executed Trust Guaranty to Lexon. For purposes of

4

this paragraph, the term "Justice Party" means Justice II, any relative of Justice II, whether by blood or affinity, or any entity wholly or partly owned, directly or indirectly, by Justice II or any other Justice Party. Any transfer made in violation to this paragraph shall be void *ab initio*.

5) <u>Governing Law</u>. It is understood and agreed that this Agreement shall be governed by, construed and enforced in accordance with, and subject to the laws of the State of West Virginia without giving effect to any choice or conflict of law provision or rule.

6) <u>Jurisdiction</u>. EACH OF THE PARTIES, TO THE FULLEST EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL: (A) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF TENNESSEE WITH RESPECT TO ANY SUIT, ACTION, OR PROCEEDING BY ANY PERSON ARISING FROM, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT; (B) AGREES THAT ANY SUCH SUIT, ACTION, OR PROCEEDING MAY BE BROUGHT EXCLUSIVELY IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN WILSON COUNTY, TENNESSEE; AND (C) SUBMITS TO THE JURISDICTION OF SUCH COURTS.

7) <u>Execution</u>. It is understood and agreed that this Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes. Additionally, the Parties agree that the execution of this Agreement by facsimile or scanned electronic mail is as valid and binding as the original.

8) <u>No Waiver</u>. No waiver of any of the terms of this Agreement shall be valid unless in writing and signed by all Parties to this Agreement.

276257 3341328v2
3/21/2018 3:37 pm

Case 3:23-cv-00077 Document 105-23 Filed 08/29/25 Page 7 of 19 PageID #: 1846

JUSTICE000378

9) <u>Partial Invalidity</u>.  If any provision of the Agreement is or may be held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

10) <u>Representations and Warranties</u>.  Each signatory hereto warrants and represents that they have authority to bind the parties for whom the signatory acts and that the claims, suits, rights, and/or interests which are the subject matter hereto are owned by the Party asserting same, have not been conveyed, assigned, transferred or sold, in whole or in part, and are free of encumbrance; that there are no pending judicial, administrative or other proceedings which would preclude entry into this Agreement and that they have carefully read and fully understand the terms of this Agreement, including the releases and obligations contained herein; and that they enter into this Agreement voluntarily.  The representations and warranties contained herein shall survive the execution and closing on this Agreement.

11) <u>Successors and Assigns</u>.  This Agreement will be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.  Each of the Parties warrants that they have not transferred the respective claims being settled in this Agreement nor any interest therein.

12) <u>Integration and Merger</u>.  The Parties have previously entered into various agreements including but not limited to a Collateral Trust Agreement and a General Agreement of Indemnity.  Those agreements, as well as any other agreements entered into between the Parties shall continue in full force and effect, and nothing contained herein shall be interpreted or deemed to limit the applicability or enforceability of any such agreements.

276257 3341328v2
3/21/2018 3:37 pm

13) <u>Additional Acts</u>.  Each Party, acting in good faith, shall execute and deliver those documents and do such other acts and things as may reasonably be requested by any Party to this Agreement to ensure that the benefits of this Agreement are realized by the Parties.

(*Signatures on Following Page*)

7

276257 3341328v2
3/21/2018 3:37 pm

Case 3:23-cv-00772     Document 605-35     Filed 08/29/25     Page 9 of 19 PageID #: 1848

JUSTICE000380

**LEXON INSURANCE COMPANY**

By: _____
Print Name:
Title:

**JAMES C. JUSTICE COMPANIES, INC.**

By: _____
Print Name:  James C. Justice II
Title: President

**SOUTHERN COAL CORPORATION**

By: _____
Print Names:  James C. Justice II
Title:  President

_____
James C. Justice II

**KENTUCKY FUEL CORPORATION**

By: _____
Print Name:
Title:

**JUSTICE FAMILY GROUP, LLC**

By: _____
Print Name:
Title:

**MECHEL BLUESTONE, INC.**

By: _____
Print Name:
Title:

**BEECH CREEK COAL CORP.**

By: _____
Print Name:
Title:

8

## EXHIBIT D

## BILL OF SALE AND ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS, THAT:

Pursuant to that certain AGREEMENT dated the ____ day of April, 2018, by and between James C. Justice Companies, Inc., Southern Coal Corporation, Kentucky Fuel Corporation, Justice Family Group, LLC and Mechel Bluestone, Inc. (referred to therein, collectively, as the "<u>Collateral Justice Companies</u>"), Beech Creek Coal Corp. (referred to therein and herein as "<u>Beech Creek</u>"), James C. Justice, II (referred to therein as "<u>Justice II</u>") and Lexon Insurance Company (referred to therein and herein as "<u>Lexon</u>"), and for and in consideration of the Indebtedness owed to Lexon referenced and defined therein, and other good and valuable consideration, the receipt and sufficiency of all of which is acknowledged, Beech Creek does hereby grant, bargain, sell, convey, deliver, carry, transfer, setover, and assign (or cause to be granted, bargained, sold, conveyed, delivered, carried, transferred, setover, and assigned) to Lexon the equipment listed below, and all Beech Creek's right, title, and interest therein and thereto (collectively, the "<u>Assets</u>"):

| **Manufacturer** | **Model No.** | **Description** | **Serial No.** |
|---|---|---|---|
| Caterpillar | 785B | Rock Truck | 6HK00493 |
| Caterpillar | 777D | Rock Truck | AGC01886 |
| O&K | RH200 | Hyd. Excavator | 200096 |
| Komatsu | 730E | Rock Truck | A30535 |
| Komatsu | 730E | Rock Truck | A30536 |

Beech Creek constitutes and appoints Lexon, and its successors and assigns, the true and lawful attorney-in-fact of Beech Creek with full power of substitution, having full right and authority in the name of Beech Creek to: (1) collect or enforce for the account of Lexon all liabilities and obligations of third parties in respect to the Assets; (2) institute and prosecute all proceedings that Lexon may deem proper in order to collect, assert, or enforce any claim, right, or title of any kind in or to the Assets; (3) defend and compromise any and all actions, suits, or

9

276257 3341328v2
3/21/2018 3:37 pm

Case 3:23-cv-00772 Document 605-25 Filed 08/29/25 Page 11 of 19 PageID #: 11850

JUSTICE000382

proceedings in respect of any of the Assets; (4) do all such acts and things in relation to the Assets that Lexon may deem advisable; and (5) make any claim under any policy of insurance in respect of any of the Assets. Beech Creek agrees that the above-stated powers are coupled with an interest and shall be irrevocable by Beech Creek in any manner or for any reason.

The Assets are transferred without any warranty whatsoever, express or implied, except that Beech Creek Seller warrants to Lexon that: (1) Beech Creek has good and marketable title to the Assets; (2) the Assets are free from all claims, liens, restrictions on alienability, and encumbrances; (3) Beech Creek has full right and authority to grant, bargain, sell, convey, deliver, carry, transfer, setover, and assign the Assets; and (4) Beech Creek will warrant and defend the title of such property against the claims and demands of all persons.

IN WITNESS WHEREOF, Beech Creek has executed, or caused to be executed, this Bill of Sale and Assignment, intending it effective on the \_\_\_\_ day of April, 2018.

**BEECH CREEK COAL CORP.**

By: _____
Print Name: _____
Title: _____

276257 3341328v2
3/21/2018 3:37 pm

# EXHIBIT E

# LIMITED COMMERCIAL GUARANTY

This LIMITED COMMERCIAL GUARANTY (this "<u>Guaranty</u>"), dated as of March ____, 2018, is made by JAMES C. JUSTICE II, an individual ("<u>Guarantor</u>"), in favor and for the benefit of LEXON INSURANCE COMPANY ("<u>Beneficiary</u>").

WHEREAS, James C. Justice Companies, Inc., Southern Coal Corporation, Kentucky Fuel Corporation, Justice Family Group, LLC and Mechel Bluestone, Inc., (collectively referred to herein as "<u>Collateral Obligor</u>"), Beech Creek Coal Corp. (referred to herein as "<u>Indebtedness Obligor</u>"), Guarantor and Beneficiary have entered into that certain Agreement, dated as of March ____, 2018 (as amended, amended and restated, supplemented or otherwise modified from time to time in accordance with its provisions, the "<u>Underlying Agreement</u>"), whereby, among other things:

(i) Beneficiary shall release to Collateral Obligor, Collateral (as defined in the Underlying Agreement) equal to an aggregate amount of four million four hundred twenty-five thousand nine hundred fourteen and 47/100 U.S. dollars ($4,425,914.47) and, in consideration of the release of the Collateral and in substitution therefor, Collateral Obligor shall provide to Beneficiary, no later than the six-month anniversary of the Effective Date of the Underlying Agreement, New Collateral (as defined in the Underlying Agreement) (such obligation of Collateral Obligor is referred to herein as the "<u>Collateral Replenishment Obligation</u>") and, failing such, Collateral Obligor shall immediately pay to Beneficiary in cash or its equivalent the amount of five million U.S. dollars ($5,000,000.00) less the value, as agreed by Lexon, of any New Collateral provided prior to such deadline that is acceptable to Lexon (such obligation of Collateral Obligor is referred to herein as the "<u>Collateral Shortfall Payment Obligation</u>"); and

(ii) Indebtedness Obligor shall transfer title to certain Equipment (as defined in the Underlying Agreement) to Beneficiary, Indebtedness Obligor will market the Equipment for sale with all proceeds of sale to be paid to Beneficiary to be applied to Indebtedness due Beneficiary (as defined in the Underlying Agreement) and Indebtedness Obligor shall pay to Beneficiary in cash or its equivalent the unpaid balance of the Indebtedness within five (5) business days after the two-month anniversary of the Effective Date of the Underlying Agreement (such obligation of Indebtedness Obligor to pay the unpaid balance of the Indebtedness is referred to herein as the "<u>Indebtedness Payment Obligation</u>").

WHEREAS, Guarantor is the majority owner of Obligor and acknowledges that he will derive substantial direct and indirect financial and other benefits from the transactions contemplated by the Underlying Agreement; and

WHEREAS, it is a condition precedent to the obligations of Beneficiary under the Underlying Agreement that Guarantor shall have executed and delivered this Guaranty, and

11

276257 3341328v2
3/21/2018 3:37 pm

Case 3:23-cv-00772 Document 105-25 Filed 08/29/25 Page 13 of 19 PageID #: 1852

JUSTICE000384

Guarantor understands and acknowledges that Beneficiary has agreed to enter the Underlying Agreement in reliance upon this Guaranty.

NOW, THEREFORE, in consideration of the promises contained herein and in order to induce Beneficiary to enter into the Underlying Agreement, Guarantor hereby agrees as follows:

1. <u>Guaranty</u>. Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Beneficiary, and its successors and assigns, as primary obligor and not merely as surety, the full and punctual payment and performance of each of the Collateral Replenishment Obligation, the Collateral Shortfall Payment Obligation and the Indebtedness Payment Obligation (collectively, the "<u>Obligations</u>"), plus all costs, expenses and fees (including the reasonable fees and expenses of Beneficiary's counsel) in any way relating to the enforcement or protection of Beneficiary's rights hereunder. Without limitation of the foregoing:

(a) In case Collateral Obligor shall fail to pay all or any part of the Collateral Shortfall Payment Obligation to Beneficiary immediately following the six-month anniversary of the Effective Date of the Underlying Agreement, Guarantor shall, within three (3) business days of Guarantor's receipt of Beneficiary's written demand therefor, pay to Seller the entire amount of the Collateral Shortfall Payment Obligation unpaid by Collateral Obligor, in like manner as if such amount constituted the direct and primary obligation of Guarantor. Beneficiary shall not be required, prior to any such demand upon or payment by Guarantor, to make any demand upon or to pursue or exhaust any of its rights or remedies against Collateral Obligor or any other guarantors with respect to the payment or performance of any of the Collateral Replenishment Obligation or the Collateral Shortfall Payment Obligation; and

(b) In case Indebtedness Obligor shall fail to pay all or any part of the Indebtedness Payment Obligation to Beneficiary within five (5) business days after the two-month anniversary of the Effective Date of the Underlying Agreement, Guarantor shall, within three (3) business days of Guarantor's receipt of Beneficiary's written demand therefor, pay to Seller the entire amount of the Indebtedness Payment Obligation unpaid by Indebtedness Obligor, in like manner as if such amount constituted the direct and primary obligation of Guarantor. Beneficiary shall not be required, prior to any such demand upon or payment by Guarantor, to make any demand upon or to pursue or exhaust any of its rights or remedies against Indebtedness Obligor or any other guarantors with respect to the payment or performance of the Indebtedness Payment Obligation.

2. <u>Guaranty Absolute and Unconditional</u>. Guarantor agrees that his obligations under this Guaranty are irrevocable, continuing, absolute and unconditional and shall not be discharged or impaired or otherwise affected by, and Guarantor hereby irrevocably waives any defenses to enforcement he may have (now or in the future) or rights of recourse against Beneficiary by reason of (i) any change in the time, place or manner of payment or performance of, or in any other term of any or all of the Obligations, or any rescission, waiver, release, assignment, amendment or other modification of the Underlying Agreement, (ii) any delay or failure of or forbearance by Beneficiary in asserting any claim or demand or in exercising or enforcing any right or remedy, whether by action, inaction or omission, under the Underlying Agreement or otherwise or (iii) any action Beneficiary may take or omit to take under the powers

12

276257 3341328v2
3/21/2018 3:37 pm

JUSTICE000385

set forth below. Beneficiary may deal with Collateral Obligor and/or Indebtedness Obligor in the same manner as if this Guaranty did not exist without affecting or impairing Guarantor's obligations under this Guaranty.

3.  **Powers of Beneficiary**. Guarantor hereby grants Beneficiary full power, in its uncontrolled discretion and without notice to Guarantor, and subject to the provisions of any agreement between any party and Beneficiary at the time in force, to deal in any manner with any or all of the Obligations including, without limitation, the following powers:

    (a)  To modify or otherwise change any terms of all or any part of the Obligations, to grant any extension or renewal thereof and any other indulgence with respect thereto and to effect any release, compromise or settlement with respect thereto;

    (b)  To enter into any agreement of forbearance with respect to any or all of the Obligations and to change the terms of any such agreement; or

    (c)  To consent to the substitution, exchange, surrender or release of all or any part of any New Collateral received by Beneficiary under the Underlying Agreement, whether or not collateral, if any, received by Beneficiary upon any such substitution, exchange, surrender or release shall be of the same or of a different character or value than the New Collateral surrendered by Beneficiary.

4.  **Certain Waivers; Acknowledgments**. Guarantor further acknowledges and agrees as follows:

    (a)  Guarantor hereby unconditionally and irrevocably waives any right to revoke this Guaranty and acknowledges that this Guaranty is continuing in nature and applies until the complete, irrevocable and indefeasible payment and satisfaction in full of all of the Obligations.

    (b)  Except with respect to the written demand specified under Subsections 1(a) and 1(b) of this Guaranty, Guarantor waives any right to require Beneficiary to make or give any presentment, protest, demand, or notice of any kind, including notice of any nonpayment or nonperformance of any or all of the Obligations, or notice of any action or nonaction on the part of Collateral Obligor, Indebtedness Obligor, Beneficiary, or other person in connection with the Obligations.

    (c)  This Guaranty is a guarantee of payment and performance and not of collection. Beneficiary shall not be obligated to enforce or exhaust its remedies against Collateral Obligor and/or Indebtedness Obligor or under the Underlying Agreement before proceeding to enforce this Guaranty.

    (d)  This Guaranty is a direct guaranty and independent of the Obligations. Beneficiary may resort to Guarantor for payment and performance of the Obligations whether or not Beneficiary shall have resorted to any collateral therefor or shall have proceeded against Collateral Obligor and/or Indebtedness Obligor or any other guarantors with respect to the

13

Obligations. Beneficiary may, at Beneficiary's option, proceed against Guarantor and Collateral Obligor and/or Indebtedness Obligor, jointly and severally, or against Guarantor only without having obtained a judgment against Collateral Obligor and/or Indebtedness Obligor.

(e)     Notwithstanding anything contained herein to the contrary, the obligations of Guarantor shall be limited to a total sum equal to (i) five million U.S. dollars ($5,000,000) plus (ii) the amount of the Indebtedness specified in the Underlying Agreement.

(f)     Guarantor agrees that his guaranty hereunder shall continue to be effective or be reinstated, as the case may be, if at any time all or part of any Obligor Transfer (as defined below) made in satisfaction of any of the Obligations is voided, rescinded or recovered or must otherwise be returned by Beneficiary upon the insolvency, bankruptcy or reorganization of Collateral Obligor and/or Indebtedness Obligor, all as though such Obligor Transfer has not been made. For purposes of this paragraph, "Obligor Transfer" means any pledge, delivery or other provision of New Collateral to Beneficiary under the Collateral Replenishment Obligation and any payment under the Collateral Shortfall Payment Obligation or the Indebtedness Payment Obligation.

(g)     Guarantor shall have no right of subrogation whatsoever with respect to any of the Obligations unless and until Beneficiary shall have received complete, irrevocable and indefeasible payment and satisfaction in full of all of the Obligations.

(h)     No waiver, modification, extension, forbearance or delay on the part of Beneficiary with respect to any Obligation or collateral and no act or thing which might, but for this provision of this Guaranty, be deemed as a legal or equitable discharge of a surety, shall operate to release the obligations of Guarantor under this Guaranty, and no delay on the part of Beneficiary in exercising any of its options, powers or rights hereunder, or a partial or single exercise thereof, shall constitute a waiver of any other rights of Beneficiary under this Guaranty.

5.     Representations and Warranties. To induce Beneficiary to enter into the Underlying Agreement, Guarantor represents and warrants that: (a) Guarantor has full legal capacity to execute, deliver and perform this Guaranty and to perform all of his obligations hereunder; (b) this Guaranty constitutes Guarantor's valid and legally binding agreement in accordance with its terms; (c) the execution, delivery and performance of this Guaranty does not contravene or cause a default under any order, judgment, decree or requirement of law binding on or affecting Guarantor or any of his assets; (d) Guarantor is currently solvent and will not be rendered insolvent by providing this Guaranty; and (e) Guarantor has received and reviewed the Underlying Agreement.

6.     Notices. All notices, requests, consents, demands and other communications hereunder (each, a "Notice") shall be in writing and delivered to the parties at the addresses designated by the receiving party in writing (as set forth on the signature page hereto). All Notices shall be delivered by personal delivery, nationally recognized overnight courier, facsimile, email or certified or registered mail (return receipt requested, postage prepaid). Except as otherwise provided in this Guaranty, a Notice is effective only (a) with written confirmation of

14

delivery or transmission; (b) upon receipt of the receiving party, and (c) if the party giving the Notice has complied with the requirements of this section.

7. <u>Assignment</u>. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that Guarantor may not, without the prior written consent of Beneficiary, assign any of his rights, powers or obligations hereunder. Beneficiary may assign this Guaranty and its rights hereunder without the consent of Guarantor. Any attempted assignment in violation of this section shall be null and void.

8. <u>Governing Law; Service of Process</u>. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF WEST VIRGINIA, WITHOUT REFERENCE TO ANY CHOICE OF LAW DOCTRINE.

9. <u>Submission to Jurisdiction</u>. EACH OF GUARANTOR AND BENEFICIARY, TO THE FULLEST EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL: (A) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF TENNESSEE WITH RESPECT TO ANY SUIT, ACTION, OR PROCEEDING BY ANY PERSON ARISING FROM, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT; (B) AGREES THAT ANY SUCH SUIT, ACTION, OR PROCEEDING MAY BE BROUGHT EXCLUSIVELY IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN WILSON COUNTY, TENNESSEE; AND (C) SUBMITS TO THE JURISDICTION OF SUCH COURTS. Each party hereby agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Guarantor further waives any objection to venue in such state and any objection to an action or proceeding in such state on the basis of forum non conveniens.

10. <u>Cumulative Rights</u>. Each right, remedy and power hereby granted to Beneficiary or allowed it by applicable law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by Beneficiary at any time or from time to time.

11. <u>Severability</u>. If any provision of this Guaranty is to any extent determined by final decision of a court of competent jurisdiction to be unenforceable, the remainder of this Guaranty shall not be affected thereby, and each provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

12. <u>No Waiver</u>. No delay or omission on Beneficiary's part in exercising any rights hereunder shall operate as a waiver of such rights or any other rights, and no waiver of any right on one occasion shall result in a waiver of such right or any other rights on any future occasion, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

15

276257 3341328v2
3/21/2018 3:37 pm

JUSTICE000388

13. <u>Entire Agreement; Amendments; Headings; Effectiveness</u>. This Guaranty, together with the Underlying Agreement, constitutes the sole and entire agreement of the parties thereto with respect to the subject matter hereof and supersedes all previous agreements or understandings, oral or written, between such parties with respect to such subject matter. No amendment or waiver of any provision of this Guaranty shall be valid and binding unless it is in writing and signed, in the case of an amendment, by both Guarantor and Beneficiary, or in the case of a waiver, by the party against which the waiver is to be effective. Section headings are for convenience of reference only and shall not define, modify, expand or limit any of the terms of this Guaranty. Delivery of this Guaranty by facsimile or in electronic (i.e., "pdf") format shall be effective as delivery of a manually executed original of this Guaranty.

[SIGNATURE PAGE FOLLOWS]

276257 3341328v2
3/21/2018 3:37 pm

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written,

**GUARANTOR**

_____
JAMES C. JUSTICE II
208 DWYER LANE
LEWISBURG, WV 24901

WITH A COPY OF NOTICES TO: STEPHEN W. BALL, 302 S. JEFFERSON STREET, ROANOKE, VA 24011

STATE OF _____)
                          ) ss.:
COUNTY OF_____)

On the \_\_\_\_ day of _____ in the year 2018, before me, the undersigned, a Notary Public in and for said State, personally appeared James C. Justice H, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**FOR PURPOSE OF PROVIDING THE WRITTEN NOTICE OF ADDRESS ONLY**

LEXON INSURANCE COMPANY
ATTN:
ADDRESS:
ADDRESS:
with a copy to:

[Signature Page to Guaranty]

17

276257 3341328v2
3/21/2018 3:37 pm

JUSTICE000390