

Defendant's
Exhibit 16

| From: | Diers, Clinton |
|---|---|
| Sent: | Monday, February 4, 2019 5:31 PM EST |
| To: | Jay Justice; Steve Ball |
| CC: | Lewis, Patricia L |
| Subject: | Fwd: Revised and Amended Justice Agreements |
| Attachments: | image003.jpg, ATT00001.htm, 2019.2.4 - Amendment No. 1 to Agreement dated March 26 2018 akCLEAN 02-04-19 v.2.pdf, ATT00002.htm, 2019.2.4 - Lexon - James C. Justice III Amended  Restated LimitedCommercial Guara.._.pdf, ATT00003.htm |

Amendment agreements attached.

A couple of notes:

- Sompo is looking to recoup the $20MM in collateral.  This set up to occur at the liquidity event.  If that even does not occur, they still want to get back to $20MM over 2 years.

- They have stated that they will review and adjust based on the engineering reports and good progress with the collateral build up and premium payments.  They need to set up the agreements in case the liquidity event doesn't happen, but our mutual goal is to get to that event, and confirm that the true exposure is much less than stated.

After you you review please let me know if you have any questions.

Regards

Clint

Clint J. Diers, SVP - Surety
Marsh & McLennan Agency LLC
4900 Libbie Mill East Boulevard, Suite 100 Richmond, VA 23230
804 915 5624 | Mobile 804 363 1171
clint.diers@marshmma.com

Begin forwarded message:

**From:** "Moran, Kieran" <KMoran@sompo-intl.com>
**Date:** February 4, 2019 at 4:57:40 PM EST
**To:** "Diers, Clinton" <clint.diers@MarshMMA.com>
**Cc:** "Beggs, Brian" <bbeggs@sompo-intl.com>
**Subject: Revised and Amended Justice Agreements**

Hi Clint –

Enclosed are the updated agreements.  As soon as they are signed and executed, we can release the apppx $3.5MM in impending bonds.

The Exhibit A – Bonds in Force attachment will follow tomorrow morning.

Kieran J. Moran
Senior Vice President – Surety

T +1 973 993 5403

JUSTICE001987

M +1 917 575 1750

kmoran@sompo-intl.com
www.sompo-intl.com

This e-mail transmission and any attachments that accompany it may contain information that is privileged, confidential or otherwise exempt from disclosure under applicable law and is intended solely for the use of the individual(s) to whom it was intended to be addressed. If you have received this e-mail by mistake, or you are not the intended recipient, any disclosure, dissemination, distribution, copying or other use or retention of this communication or its substance is prohibited. If you have received this communication in error, please immediately reply to the author via e-mail that you received this message by mistake and also permanently delete the original and all copies of this e-mail and any attachments from your computer.

Please note that coverage cannot be bound or altered by sending an email. You must speak with or receive written confirmation from a licensed representative of our firm to put coverage in force or make changes to your existing program. Thank you.

*********************************************************************
This e-mail, including any attachments that accompany it, may contain
information that is confidential or privileged. This e-mail is
intended solely for the use of the individual(s) to whom it was intended to be
addressed. If you have received this e-mail and are not an intended recipient,
any disclosure, distribution, copying or other use or
retention of this email or information contained within it are prohibited.
If you have received this email in error, please immediately
reply to the sender via e-mail and also permanently
delete all copies of the original message together with any of its attachments
from your computer or device.
*********************************************************************

JUSTICE001988

# AMENDMENT NO. 1 TO
## AGREEMENT DATED MARCH 26, 2018

**THIS AMENDMENT NO. 1** to the Agreement (this "Amendment") dated March 26, 2018, is made and entered into as of the 4th day of February, 2019 by and among James C. Justice Companies, Inc., Southern Coal Corporation, Kentucky Fuel Corporation, Justice Family Group, LLC and Mechel Bluestone, Inc. (collectively the "Collateral Justice Companies" or the "Collateral Obligor"), Beech Creek Coal Corp. ("Beech Creek"), James C. Justice, II ("Justice II") and Lexon Insurance Company and its affiliates and subsidiaries ("Lexon"), (collectively, the "Parties and each individually a "Party").  All capitalized terms used but not otherwise defined herein shall have the respective meanings set forth in the Agreement (as defined below).

RECITALS

**WHEREAS**, reference is made to that certain Agreement dated March 26, 2018 by and among the Parties (the "Agreement") which, as modified herein, is incorporated herein by reference as if set forth in full;

**WHEREAS**, more than One Million Twenty-Five Thousand U.S. dollars ($1,025,000.00) of the Indebtedness remains unpaid (the "Remaining Indebtedness");

**WHEREAS**, the Collateral Justice Companies failed to provide New Collateral to Lexon under the terms of the Agreement;

**WHEREAS**, Justice II entered into a Limited Commercial Guaranty dated March 26, 2018 for the benefit of Lexon (the "Guaranty") pursuant to which Justice II guaranteed payment of the Indebtedness and the New Collateral;

**WHEREAS,** as of February 4, 2019, the Remaining Indebtedness and New Collateral remained unpaid in breach of the Agreement;

JUSTICE001989

WHEREAS, Lexon issued a written demand to Justice II on January 14, 2019 demanding payment of the remaining Indebtedness and the New Collateral;

WHEREAS, Justice II has breached the terms of the Guaranty;

WHEREAS, the Collateral Justice Companies, Beech Creek and Justice II have asked Lexon to execute new bonds having a total penal sum of approximately Three Million Five Hundred Thousand U.S. dollars $3,500,000.00;

WHEREAS, Lexon has agreed to consider the issuance of such bonds if the Collateral Justice Companies, Beech Creek and Justice II agree to certain amendments to the terms and conditions of the Agreement; and

WHEREAS, in connection with the foregoing, the Parties hereto desire to amend the Agreement.

AMENDMENT

NOW, THEREFORE, for and in consideration of the terms, conditions and covenants set forth in this Amendment and other good and valuable consideration herein acknowledged as received, the Parties to this Amendment agree as follows:

Collateral

1)      Paragraph 2 of the Agreement is hereby deleted in its entirety and replaced by the following:

"2)      In substitution for the Collateral released, the Collateral Justice Companies and Beech Creek, jointly and severally, agree to deliver to Lexon new collateral in the total sum of Twenty Million U.S. dollars ($20,000,000.00) (the "New Collateral").   The Collateral Justice Companies and Beech Creek agree to deliver the New Collateral to Lexon as follows:

2

JUSTICE001990

a)      The Collateral Justice Companies and Beech Creek agree to make monthly partial payments to Lexon in the amount of Two Hundred and Fifty Thousand U.S. dollars ($250,000.00) which shall be due on the last day of each month starting on February 28, 2019 (each payment a "Collateral Payment") and ending on the date that Lexon confirms it has received New Collateral equal to Twenty Million U.S. dollars ($20,000,000.00).   For the avoidance of doubt, the first Collateral Payment shall be due on February 28, 2019.  While Lexon agrees to accept partial payments throughout each month, in no event shall the total amount delivered to Lexon in any given month be less than Two Hundred and Fifty Thousand U.S. dollars ($250,000.00).

b)      The Collateral Justice Companies and Beech Creek represent to Lexon that they are in the process of selling certain entities (the "Liquidity Event").

Upon the closing of the Liquidity Event, the Collateral Justice Companies and Beech Creek shall instruct the appropriate person/closing agent to make a direct payment to Lexon from the sale proceeds in an amount equal to  Twenty Million U.S. dollars ($20,000,000.00)   less any Collateral Payments previously made, including any partial Collateral Payments.

d)      Notwithstanding anything to the contrary and notwithstanding the failure of the Liquidity Event to occur, the Collateral Justice Companies and Beech Creek, jointly and severally, agree to deliver to Lexon additional payments as follows (each payment an "Additional Collateral Payment"):

i.      To the extent that the New Collateral has not been fully delivered to Lexon on or before September 30, 2019, the Collateral Justice Companies

3

JUSTICE001991

and Beech Creek, jointly and severally, agree to pay Lexon an amount equal to Five Million U.S. dollars ($5,000,000) less any Collateral Payments previously made, including any partial Collateral Payment on or before October 1, 2019.

ii.   To the extent that the New Collateral has not been fully delivered to Lexon on or before March 31, 2020, the Collateral Justice Companies and Beech Creek, jointly and severally, agree to pay Lexon an amount equal to Ten Million U.S. dollars ($10,000,000) less any Collateral Payments previously made including any partial Collateral Payment, less any Additional Collateral Payment previously made. Such payment shall be due on or before April 1, 2020.

iii.  To the extent that the New Collateral has not been fully delivered to Lexon on or before September 30, 2020, the Collateral Justice Companies and Beech Creek, jointly and severally, agree to pay Lexon an amount equal to Fifteen Million U.S. dollars ($15,000,000) less any Collateral Payments previously made including any partial Collateral Payment, less any Additional Collateral Payment previously made. Such payment shall be due on or before October 1, 2020.

iv.   To the extent that the New Collateral has not been fully delivered to Lexon on or before March 31, 2021, the Collateral Justice Companies and Beech Creek, jointly and severally, agree to pay Lexon an amount equal to Twenty Million U.S. dollars ($20,000,000) less any Collateral Payments previously made including any partial Collateral Payment, less any

4

JUSTICE001992

Additional Collateral Payment previously made. Such payment shall be due on or before April 1, 2021.

e)  The obligation of the Collateral Justice Companies and Beech Creek to post the New Collateral as set forth above shall be personally guaranteed by Justice II pursuant to the terms and conditions of the Guaranty (as defined below).

<u>The Premium</u>

2)  Paragraph 3 of the Agreement is deleted in its entirety and replaced by the following:

"3)  The Parties Agree the Remaining Indebtedness is equal to One Million Twenty-Five Thousand U.S. dollars ($1,025,000.00). The Parties also agree that in addition to the Remaining Indebtedness, additional premium of $2,513,400.75 is now due and owing (the "New Indebtedness"). The Remaining Indebtedness together with the New Indebtedness is equal to $3,538,400.75 (the "Total Indebtedness").

b)  The Collateral Justice Parties and Beech Creek agree, jointly and severally, to pay Lexon the Total Indebtedness as follows:

i.  On the last day of each month, the Collateral Justice Companies and Beech Creek, jointly and severally, agree to pay Lexon the sum of Two Hundred Thousand U.S. dollars ($200,000.00) per month until the Total Indebtedness is paid in full (the "Premium Payments"). Such Premium Payments will begin on February 28, 2019. Lexon agrees to accept partial payments throughout each month but, in no event shall the amount paid in any given month be less than $200,000.00.

5

JUSTICE001993

ii. On [March 26, 2018], under the terms of the Agreement, Beech Creek transferred title/ownership of certain equipment/machinery (the "Equipment") set forth on Exhibit C, attached hereto and made apart hereof, to Lexon. In addition to the Premium Payments described above, Beech Creek agrees to sell the Equipment with the proceeds to be used to reduce the Total Indebtedness as detailed below:

1. Beech Creek will continue to provide insurance coverage for the Equipment and the applicable policies shall name Lexon as an additional insured.

2. Beech Creek shall sell the Equipment with the proceeds to be used to reduce the Total Indebtedness. Such terms of all sales (including price) shall be subject to Lexon's approval. At the time of any sale, Lexon shall transfer ownership of the sold Equipment to the purchaser and the entire sale proceeds shall be given to Lexon. Beech Creek shall bear any and all costs of the sale.

3. In the event the proceeds from the sale of the Equipment exceed the amount required to fully satisfy the Total Indebtedness, Lexon shall hold the excess as a credit to be applied toward future obligations of the Collateral Justice Companies with respect to the Bonds, whether premiums or otherwise.

c) The Collateral Justice Companies and Beech Creek recognize that additional amounts for premium may become due during the term of this Agreement and they hereby agree that the New Indebtedness shall be increased in like amount

6

JUSTICE001994

(e.g., if new premium is due on March 2, 2019 in the amount of $10,000.00, the New Indebtedness is increased by $10,000.00). Additional amounts for premiums under this sub-paragraph are those premiums that are sixty (60) days or more past due.

d) At such time as the Total Indebtedness is paid in full, the Collateral Justice Companies and Beech Creek shall pay Lexon (i) any additional premium due, or (ii) Two Hundred Thousand U.S. dollars ($200,000.00) per month, whichever is greater. Such payments shall be due on the last day of each month.

e) In the event Lexon does not receive the payments described in this Paragraph 3 of the Agreement as required herein, such failure shall constitute a material breach of this Agreement and Lexon may exercise any and all rights it may have under the law, the Agreement (including any amendments thereto) and the Guaranty.

f) The payment of the Total Indebtedness shall be personally guaranteed by Justice II pursuant to the terms and conditions set forth in the Guaranty (as defined below)."

3) Exhibit C (Equipment List) to the Agreement is hereby deleted in its entirety and replaced with Exhibit C attached hereto.

4) Exhibit E to the Agreement is hereby deleted in its entirety and replaced with the form of Guaranty attached hereto as Exhibit E,

5) A new Paragraph 14 is added to the Agreement immediately following Paragraph 13:

14) Lexon agrees that it will consider applications from the Collateral Justice Companies and/or their subsidiaries and affiliates for additional bonds. Lexon's

7

JUSTICE001995

consideration of these applications will be in accordance with Lexon's underwriting procedures. The execution and issuance of any additional bonds will be in the sole and absolute discretion of Lexon.

> a) Lexon recognizes that it has received a request for new bonds, including but not limited to Kentucky Fuel Corporation, A&G Coal Corporation and Infinity Energy, Inc., as principal and the State of Kentucky as obligee in cumulative penal sums of approximately Three Million Five Hundred Thousand U.S. dollars ($3,500,000.00) (the "New Kentucky Bonds"). Lexon agrees to execute the New Kentucky Bonds upon the execution of this Amendment, and execution by Justice II of the Guaranty, each dated February 4, 2019."

6) A new Paragraph 15 is added to the Agreement immediately following Paragraph 14:

> "15) At Lexon's request, the Collateral Justice Companies and Beech Creek agree to allow a third-party engineering firm to examine their books and records during normal business hours and upon reasonable notice."

7) The Parties agree time is expressly made of the essence with respect to each and every provision of this Amendment and the documents and instruments entered into in connection herewith.

8) Contemporaneously with the execution of this Amendment, and as a condition precedent to any and all obligations of Lexon under this Amendment, Justice II shall execute and deliver the form of Guaranty attached hereto as Exhibit E.

JUSTICE001996

9) Except as modified and expressly amended by this Amendment, the Agreement is in all respects ratified and confirmed, and the terms, provisions and conditions therof shall be and remain in full force and effect. If there is conflict between this amendment and the Agreement or any earlier amendment, the terms of this amendment will prevail.

*(Signatures on Following Page)*

9

JUSTICE001997

**LEXON INSURANCE COMPANY**

By: _____
Print Name: Brian Beggs
Title: CEO

**JAMES C. JUSTICE COMPANIES, INC.**

By: _____
Print Name: James C. Justice II
Title: President

**SOUTHERN COAL CORPORATION**

By: _____
Print Names: James C. Justice II
Title: President

_____
James C. Justice II

**KENTUCKY FUEL CORPORATION**

By: _____
Print Name:
Title:

**JUSTICE FAMILY GROUP, LLC**

By: _____
Print Name:
Title:

**MECHEL BLUESTONE, INC.**

By: _____
Print Name:
Title:

**BEECH CREEK COAL CORP.**

By: _____
Print Name:
Title:

10

JUSTICE001998

EXHIBIT C

EQUIPMENT LIST

| | | |
|---|---|---|
| CAT 785B | 6HK00493 | $225,000.00 |
| CAT 777D | AGC01886 | $160,000.00 |
| O&K RH200 | 200096 | $1,120,000.00 |
| Komatsu 730E | A30535 | $880,000.00 |

11

JUSTICE001999

## AMENDED & RESTATED LIMITED COMMERCIAL GUARANTY

This AMENDED & RESTATED LIMITED COMMERCIAL GUARANTY (this "Guaranty"), dated as of February 4, 2019, is made by JAMES C. JUSTICE II, an individual ("Guarantor"), in favor and for the benefit of LEXON INSURANCE COMPANY and its affiliates and subsidiaries (" Beneficiary").

WHEREAS, the Guarantor entered into a Limited Commercial Guaranty dated March 26, 2018 (the Original Guaranty");

WHEREAS, the Guarantor now wishes to amend and restate the terms of the Original Guaranty on the terms and conditions as set forth herein;

WHEREAS, James C. Justice Companies, Inc., Southern Coal Corporation, Kentucky Fuel Corporation, Justice Family Group, LLC and Mechel Bluestone, Inc., (collectively referred to herein as "Collateral Obligor"), Beech Creek Coal Corp. (referred to herein as "Indebtedness Obligor"), Guarantor and Beneficiary have entered into that certain Agreement, dated as of March 26, 2018, as amended by that certain Amendment No. 1, dated as of February 4, 2019 (as further amended, amended and restated, supplemented or otherwise modified from time to time in accordance with its provisions, the "Amended Underlying Agreement"), whereby, among other things:

(i)     In substitution for Collateral (as defined in the Amended Underlying Agreement) previously released by Beneficiary, Collateral Obligor and Indebtedness Obligor shall provide to Beneficiary New Collateral (as defined in the above-referenced Amendment No. 1) in the total sum of twenty million U.S. dollars ($20,000,000.00) by means of: (i) partial payments of two hundred fifty thousand U.S. dollars ($250,000.00) per month, due and payable commencing on February 28, 2019 and on the last day of each month thereafter; (ii) upon the closing of the Liquidity Event (as defined in the above-referenced Amendment No. 1), a payment on the day of closing in the amount of twenty million U.S. dollars ($20,000,000.00) less any partial payments previously received under item (i); and (iii) to the extent the New Collateral has not been delivered to Lexon, such Additional Collateral Payments (as defined in the above-referenced Amendment No. 1)necessary to bring the total amount of the New Collateral to twenty million U.S. dollars ($20,000,000.00) (such obligations of Collateral Obligor and Indebtedness Obligor are referred to herein collectively as the "New Collateral Replenishment Obligation"); and

(ii)     Indebtedness Obligor transferred title to certain Equipment (as defined in the Amended Underlying Agreement) to Beneficiary, Indebtedness Obligor has marketed and will continue to market the Equipment for sale with all proceeds of sale to be paid to Beneficiary to be applied to the Total Indebtedness (as defined in the above-referenced Amendment No. 1) due Beneficiary, and Collateral Obligor and Indebtedness Obligor shall pay to Beneficiary in cash or its equivalent the sum of two hundred thousand U.S. dollars ($200,000.00) per month, due and payable commencing on February 28, 2019 and on the last day of each month thereafter, until the Total Indebtedness (including any new premiums becoming due during the term of the Amended Underlying Agreement) is paid in full (such obligation of Collateral Obligor and Indebtedness Obligor to pay the unpaid

1

JUSTICE002002

balance of the Total Indebtedness is referred to herein as the "New Indebtedness Payment Obligation").

WHEREAS, Guarantor is the majority owner of Obligor and acknowledges that he will derive substantial direct and indirect financial and other benefits from the transactions contemplated by the Amended Underlying Agreement;

WHEREAS, Collateral Obligors, the Guarantor and the Indebtedness Obligor, including their affiliates and subsidiaries, have previously entered into one or more General Agreement of Indemnity (individually and collectively, the "GAI") relating to certain bonds (the "Justice Bonds"), including, but not limited to the listing of the Justice Bonds attached here to as Exhibit A; and

WHEREAS, it is a condition precedent to the obligations of Beneficiary under the Amended Underlying Agreement that Guarantor shall have executed and delivered this Guaranty, and Guarantor understands and acknowledges that Beneficiary has agreed to enter the Amended Underlying Agreement in reliance upon this Guaranty.

NOW, THEREFORE, in consideration of the promises contained herein and in order to induce Beneficiary to enter into the Amended Underlying Agreement, Guarantor hereby agrees as follows:

1.    Guaranty.    Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Beneficiary, and its successors and assigns, as primary obligor and not merely as surety, the full and punctual payment and performance of each of the New Collateral Replenishment Obligation and the New Indebtedness Payment Obligation (collectively, the "Obligations"), plus all costs, expenses and fees (including the reasonable fees and expenses of Beneficiary's counsel) in any way relating to the enforcement or protection of Beneficiary's rights hereunder.  Without limitation of the foregoing:

(a)    In case Collateral Obligor and Indebtedness Obligor shall fail to pay all or any part of the New Collateral Replenishment Obligation to Beneficiary immediately when due as provided in the Amended Underlying Agreement, Guarantor shall, within three (3) business days of Guarantor's receipt of Beneficiary's written demand therefor, pay to Beneficiary the entire amount of the New Collateral Replenishment Obligation unpaid by Collateral Obligor and Indebtedness Obligor, in like manner as if such amount constituted the direct and primary obligation of Guarantor.  Beneficiary shall not be required, prior to any such demand upon or payment by Guarantor, to make any demand upon or to pursue or exhaust any of its rights or remedies against Collateral Obligor, Indebtedness Obligor, or any other guarantors with respect to the payment or performance of the New Collateral Replenishment Obligation;

(b)    In case Collateral Obligor and Indebtedness Obligor shall fail to pay all or any part of the New Indebtedness Payment Obligation to Beneficiary immediately when due as provided in the Amended Underlying Agreement, Guarantor shall, within three (3) business days of Guarantor's receipt of Beneficiary's written demand therefor, pay to Beneficiary the entire amount of the New Indebtedness Payment Obligation unpaid by Collateral Obligor and Indebtedness Obligor, in like manner as if such amount constituted the direct and primary obligation of Guarantor.  Beneficiary shall not be required, prior to any such demand upon or

2

JUSTICE002003

payment by Guarantor, to make any demand upon or to pursue or exhaust any of its rights or remedies against Collateral Obligor, Indebtedness Obligor, or any other guarantors with respect to the payment or performance of the New Indebtedness Payment Obligation; and

(c)     In the event that any Collateral Obligor, Guarantor and/or Indebtedness Obligor, including their affiliates and subsidiaries, shall fail to pay any amounts due under any GAI immediately when due as provided in any GAI, Guarantor shall, within ten (10) business days of Guarantor's receipt of Beneficiary's written demand therefor, pay to Beneficiary the entire amount of the amount remaining unpaid by Collateral Obligor, Guarantor and/or Indebtedness Obligor, including their affiliates and subsidiaries, in like manner as if such amount constituted the direct and primary obligation of Guarantor. Beneficiary shall not be required, prior to any such demand upon or payment by Guarantor, to make any demand upon or to pursue or exhaust any of its rights or remedies against any third party with respect to the payment or performance of the obligations set forth within any GAI.

2.     Indemnification. The Guarantor shall, upon demand from the Beneficiary, promptly indemnify, exonerate, reimburse and hold the Beneficiary harmless from and against any and all liability, damage, cost and expense of whatsoever kind or nature (cumulatively, "Loss") and pay the Beneficiary for any Loss sustained or incurred (i) in connection with or arising out of any of the Beneficiary's obligations under the Amended Underlying Agreement or any GAI, (ii) by reason of the failure of the Guarantor to perform or comply with the covenants and conditions of this Guaranty, and (iii) enforcing any of the covenants and conditions of this Agreement. An itemized statement of Loss by the Beneficiary, sworn to by an officer of the Beneficiary, shall be prima facie evidence of the fact and amount of the liability of the Guarantor to the Beneficiary. The Beneficiary shall be entitled to receive interest at the rate of six percent per annum from the date of its payment of each Loss.

3.     Guaranty Absolute and Unconditional. Guarantor agrees that his obligations under this Guaranty are irrevocable, continuing, absolute and unconditional and shall not be discharged or impaired or otherwise affected by, and Guarantor hereby irrevocably waives any defenses to enforcement he may have (now or in the future) or rights of recourse against Beneficiary by reason of (i) any change in the time, place or manner of payment or performance of, or in any other term of any or all of the Obligations, or any rescission, waiver, release, assignment, amendment or other modification of the Amended Underlying Agreement, (ii) any delay or failure of or forbearance by Beneficiary in asserting any claim or demand or in exercising or enforcing any right or remedy, whether by action, inaction or omission, under the Amended Underlying Agreement, any GAI or otherwise, or (iii) any action Beneficiary may take or omit to take under the powers set forth below. Beneficiary may deal with Collateral Obligor and/or Indebtedness Obligor in the same manner as if this Guaranty did not exist without affecting or impairing Guarantor's obligations under this Guaranty.

4.     Powers of Beneficiary. Guarantor hereby grants Beneficiary full power, in its uncontrolled discretion and without notice to Guarantor, and subject to the provisions of any agreement between any party and Beneficiary at the time in force, to deal in any manner with any or all of the Obligations including, without limitation, the following powers:

3

JUSTICE002004

(a)     To modify or otherwise change any terms of all or any part of the Obligations, to grant any extension or renewal thereof and any other indulgence with respect thereto and to effect any release, compromise or settlement with respect thereto;

(b)     To enter into any agreement of forbearance with respect to any or all of the Obligations and to change the terms of any such agreement; or

(c)     To consent to the substitution, exchange, surrender or release of all or any part of any New Collateral received by Beneficiary under the Amended Underlying Agreement, whether or not collateral, if any, received by Beneficiary upon any such substitution, exchange, surrender or release shall be of the same or of a different character or value than the New Collateral surrendered by Beneficiary.

5.     <u>Certain Waivers; Acknowledgments</u>.  Guarantor further acknowledges and agrees as follows:

(a)     Guarantor hereby unconditionally and irrevocably waives any right to revoke this Guaranty and acknowledges that this Guaranty is continuing in nature and applies until the complete, irrevocable and indefeasible payment and satisfaction in full of all of the Obligations.

(b)     Except with respect to the written demand specified under Subsections 1(a) and 1(b) of this Guaranty, Guarantor waives any right to require Beneficiary to make or give any presentment, protest, demand, or notice of any kind, including notice of any nonpayment or nonperformance of any or all of the Obligations, or notice of any action or nonaction on the part of Collateral Obligor, Indebtedness Obligor, Beneficiary, or other person in connection with the Obligations.

(c)     This Guaranty is a guarantee of payment and performance and not of collection. Beneficiary shall not be obligated to enforce or exhaust its remedies against Collateral Obligor and/or Indebtedness Obligor or under the Amended Underlying Agreement before proceeding to enforce this Guaranty.

(d)     This Guaranty is a direct guaranty and independent of the Obligations. Beneficiary may resort to Guarantor for payment and performance of the Obligations whether or not Beneficiary shall have resorted to any collateral therefor or shall have proceeded against Collateral Obligor and/or Indebtedness Obligor or any other guarantors with respect to the Obligations. Beneficiary may, at Beneficiary's option, proceed against Guarantor and Collateral Obligor and/or Indebtedness Obligor, jointly and severally, or against Guarantor only without having obtained a judgment against Collateral Obligor and/or Indebtedness Obligor.

(e)     Notwithstanding anything contained herein to the contrary, the obligations of Guarantor shall be limited to a total sum equal to (i) fifteen million U.S. dollars ($15,000,000.00) plus (ii) the amount of the Total Indebtedness specified in the Amended Underlying Agreement; (ii) *provided that*, in the event of any default by Collateral Obligor and/or Indebtedness Obligor with respect to the New Collateral Replenishment Obligation or the New Indebtedness Payment Obligation, including without limitation any failure to timely pay any payment due under either such Obligation, the obligations of Guarantor shall instead be

4

JUSTICE002005

limited to a total sum equal to (i) twenty million U.S. dollars ($20,000,000.00) plus (ii) the amount of the Total Indebtedness specified in the Amended Underlying Agreement.

(f)     Guarantor agrees that his guaranty hereunder shall continue to be effective or be reinstated, as the case may be, if at any time all or part of any Obligor Transfer (as defined below) made in satisfaction of any of the Obligations is voided, rescinded or recovered or must otherwise be returned by Beneficiary upon the insolvency, bankruptcy or reorganization of Collateral Obligor and/or Indebtedness Obligor, all as though such Obligor Transfer has not been made.  For purposes of this paragraph, "Obligor Transfer" means any pledge, delivery or other provision of New Collateral to Beneficiary under the New Collateral Replenishment Obligation and any payment under the Indebtedness Payment Obligation.

(g)     Guarantor shall have no right of subrogation whatsoever with respect to any of the Obligations unless and until Beneficiary shall have received complete, irrevocable and indefeasible payment and satisfaction in full of all of the Obligations.

(h)     No waiver, modification, extension, forbearance or delay on the part of Beneficiary with respect to any Obligation or collateral and no act or thing which might, but for this provision of this Guaranty, be deemed as a legal or equitable discharge of a surety, shall operate to release the obligations of Guarantor under this Guaranty, and no delay on the part of Beneficiary in exercising any of its options, powers or rights hereunder, or a partial or single exercise thereof, shall constitute a waiver of any other rights of Beneficiary under this Guaranty.

6.     Representations and Warranties. To induce Beneficiary to enter into the Amended Underlying Agreement, Guarantor represents and warrants that: (a) Guarantor has full legal capacity to execute, deliver and perform this Guaranty and to perform all of his obligations hereunder; (b) this Guaranty constitutes Guarantor's valid and legally binding agreement in accordance with its terms; (c) the execution, delivery and performance of this Guaranty does not contravene or cause a default under any order, judgment, decree or requirement of law binding on or affecting Guarantor or any of his assets; (d) Guarantor is currently solvent and will not be rendered insolvent by providing this Guaranty; and (e) Guarantor has received and reviewed the Amended Underlying Agreement.

7.     Notices. All notices, requests, consents, demands and other communications hereunder (each, a "Notice") shall be in writing and delivered to the parties at the addresses designated by the receiving party in writing (as set forth on the signature page hereto). All Notices shall be delivered by personal delivery, nationally recognized overnight courier, facsimile, email or certified or registered mail (return receipt requested, postage prepaid). Except as otherwise provided in this Guaranty, a Notice is effective only (a) with written confirmation of delivery or transmission; (b) upon receipt of the receiving party, and (c) if the party giving the Notice has complied with the requirements of this section.

8.     Assignment. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that Guarantor may not, without the prior written consent of Beneficiary, assign any of his rights, powers or obligations hereunder.  Beneficiary may assign this Guaranty and its rights hereunder without the consent of Guarantor. Any attempted assignment in violation of this section shall be null and void.

5

JUSTICE002006

9.      <u>Governing Law; Service of Process</u>. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF WEST VIRGINIA, WITHOUT REFERENCE TO ANY CHOICE OF LAW DOCTRINE.

10.    <u>Submission to Jurisdiction</u>. EACH OF GUARANTOR AND BENEFICIARY, TO THE FULLEST EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL: (A) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF TENNESSEE WITH RESPECT TO ANY SUIT, ACTION, OR PROCEEDING BY ANY PERSON ARISING FROM, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT; (B) AGREES THAT ANY SUCH SUIT, ACTION, OR PROCEEDING MAY BE BROUGHT EXCLUSIVELY IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN WILSON COUNTY, TENNESSEE; AND (C) SUBMITS TO THE JURISDICTION OF SUCH COURTS.  Each party hereby agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Guarantor further waives any objection to venue in such state and any objection to an action or proceeding in such state on the basis of forum non conveniens.

11.    <u>Cumulative Rights</u>. Each right, remedy and power hereby granted to Beneficiary or allowed it by applicable law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by Beneficiary at any time or from time to time.

12.    <u>Severability</u>. If any provision of this Guaranty is to any extent determined by final decision of a court of competent jurisdiction, the laws of any state or for any other reason to be unenforceable, the remainder of this Guaranty shall not be affected thereby, and each provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

13.    <u>No Waiver</u>. No delay or omission on Beneficiary's part in exercising any rights hereunder shall operate as a waiver of such rights or any other rights, and no waiver of any right on one occasion shall result in a waiver of such right or any other rights on any future occasion, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

14.    <u>Entire Agreement; Amendments; Headings; Effectiveness</u>. This Guaranty, together with the Amended Underlying Agreement, constitutes the sole and entire agreement of the parties thereto with respect to the subject matter hereof and supersedes all previous agreements or understandings, oral or written, between such parties with respect to such subject matter. No amendment or waiver of any provision of this Guaranty shall be valid and binding unless it is in writing and signed, in the case of an amendment, by both Guarantor and Beneficiary, or in the case of a waiver, by the party against which the waiver is to be effective. Section headings are for convenience of reference only and shall not define, modify, expand or limit any of the terms of this Guaranty. Delivery of this Guaranty by facsimile or in electronic (i.e., "pdf") format shall be effective as delivery of a manually executed original of this Guaranty.

JUSTICE002007

[SIGNATURE PAGE FOLLOWS]

JUSTICE002008

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written,

**GUARANTOR**

_____
JAMES C. JUSTICE II
208 DWYER LANE
LEWISBURG, WV 24901

WITH A COPY OF NOTICES TO: STEPHEN W. BALL, 302 S. JEFFERSON STREET, ROANOKE, VA 24011

STATE OF _____)
                              ) ss.:
COUNTY OF_____)

On the \_\_\_\_ day of _____ in the year 2018, before me, the undersigned, a Notary Public in and for said State, personally appeared James C. Justice III, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

**FOR PURPOSE OF PROVIDING THE WRITTEN NOTICE OF ADDRESS ONLY**

LEXON INSURANCE COMPANY
ATTN:
ADDRESS:
ADDRESS:
with a copy to:

[Signature Page to Guaranty]

8

JUSTICE002009

EXHIBIT A

BONDS IN FORCE – JUSTICE BONDS

JUSTICE002010