IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| LEXON INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>  -against-<br><br>JAMES C. JUSTICE II,<br><br>      Defendant. | Civil Action No. 3:23-cv-00772<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Barbara D. Holmes |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES**

***Introduction.*** Defendant's Objections (the "Objections") to Lexon's Motion for Attorneys' Fees and Expenses (the "Motion") misread the Guaranty, misapply West Virginia law, rely on cherry-picked time entries ignoring the litigation's scope, and disregard the practical demands of a complex business litigation. As the Court found, ECF 68, Lexon is entitled to recover fees and expenses incurred due to Defendant's breach of the Guaranty. Lexon's counsel performed necessary, reasonable work at a significant discount (over $1.3 million not sought), and Defendant's litigation choices increased the time expended. Lexon's Motion should be granted.

***Lexon is entitled to attorneys' fees and expenses under Section 1 or 2.*** Contrary to what Defendant asserts, the Court previously found Lexon may recover under Section 1 and/or Section 2. ECF 69. Defendant's argument also contradicts established contract principles:[1] a specific provision displaces a general one only if irreconcilable, which is not the case here. *Cf. U.S. for Use of Westinghouse Elec. Corp. v. Marietta Mfg. Co.*, 339 F. Supp. 18, 27 (S.D.W. Va. 1972). Both provisions entitle Lexon to recover fees.

Under Section 2, Lexon may submit a sworn Statement of Loss, ECF 136, to recover its fees and expenses. This Statement is *prima facie* evidence of reasonableness, placing the burden on Defendant to prove that Lexon's fees are unreasonable. *See Buckeye Union Ins. Co. v. Boggs*, 109 F.R.D. 420, 423–24 (S.D.W. Va. 1986). Defendant has not met his burden.

***Lexon's attorneys' fees and expenses are reasonable.*** Defendant asserts that Lexon seeks

---

[1] Contrary to Defendant's claim, *contra proferentem* does not apply. The Court already found that Section 2 is unambiguous and that "Governor Justice must indemnify Lexon for its Loss." ECF 69; *see also* ECF 142 at 32 n.11 (citing *Henson v. Lamb*, 199 S.E. 459, 461–62 (W. Va. 1938)). Even if the Guaranty were ambiguous, that canon is inapplicable because, unlike Defendant's cited cases, the Guaranty resulted from arms-length negotiations between experienced parties represented by counsel. *See Lamps Plus v. Varela*, 587 U.S. 176, 187 (2019). *Cf. Elkland Holdings v. EagleMining*, 2015 WL 13037115, at *15 (S.D.W. Va. July 29, 2015) ("sophistication and relative bargaining power is part of the rationale for" *contra proferentem*); *Jochum v. Waste Mgmt.*, 680 S.E.2d 59, 64 (W. Va. 2009) (canon applies where there are "uncertainties" in contract).

"unreasonable" attorneys' fees and expenses based, in part, on the fact that some of Lexon's counsel are based in New York and charge rates consistent with that international legal market. As support for this assertion, Defendant misinterprets West Virginia law by claiming it prohibits recovery at non-local rates. The touchstone remains reasonableness under *all* circumstances, including stakes, complexity, skill, and results. *See Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 161–62 (W. Va. 1986).

Lexon demonstrated in its Motion that these factors warrant the fees and expenses sought. ***First***, the litigation spanned over two years, including extensive motion practice, discovery, mediations, trial, and pre- and post-trial submissions. ***Second***, the stakes were substantial—seeking tens of millions of dollars, vindicating Lexon's rights under a guaranty in a high-profile case against a sitting governor/senator, and involving one of Lexon's largest legacy accounts. ***Third***, Lexon's longstanding relationship with lead counsel generated efficiencies and discounts ($1.3 million). ***Fourth***, staffing was reasonable; associates handled most of the work, partners focused on strategy and key examinations, and Lexon voluntarily omitted $498,128.53 in fees for most non-attorney and non-core team members. ***Fifth***, Lexon secured a significant victory: summary judgment on liability and full damages at trial ($29,067,042.43). ECF 68; ECF 142; *see Waldo v. Consumers Energy Co.*, 726 F.3d 802, 824 (6th Cir. 2013) (recovery of all attorneys' fees allowed for "excellent results").

Thus, even if Lexon did have some burden beyond its *prima facie* showing of reasonableness, it has met that burden. As explained below, Defendant's Objections regarding counsel's rates and strategic decisions do not show, much less meet his burden to prove, that Lexon's total fee request is unreasonable.

***The hourly rates are reasonable.*** Cadwalader and V&E's rates are reasonable for national

firms representing clients in litigation in the Middle District of Tennessee. *See Smith v. Serv. Master Corp.*, 592 F. App'x 363, 369 (6th Cir. 2014). Defendant incorrectly insists Nashville rates represent a ceiling. Lexon may recover its out-of-town counsel's rates because these rates are reasonable and consistent with the rates charged by national law firms for attorneys of comparable skill, experience, and reputation. *See Cronin v. Sanuwave Health, Inc.*, 2024 WL 5344451, at *3 (D. Minn. Oct. 4, 2024) (counsel's experience justified rates over $1,000/hour, which "aligned with those customarily charged by national law firms"); *Duong v. Groundhog Enters., Inc.*, 2020 WL 2041939, at *11 (C.D. Cal. Feb. 28, 2020) (same principle). Barely more than 3% separates lead counsel's blended rate of $925.21 and the rate charged by Bass Berry's Mr. Phillips.

Defendant's attempt to cap Lexon's counsel's rates also ignores the parties' bargain. Lexon was obligated to file in Nashville under the Guaranty. JX 17 § 10. The Guaranty contains no proscriptions on Lexon's choice or location of counsel or the rates charged. Lexon's retention of out-of-town counsel also was appropriate given counsel's deep understanding of Lexon's surety business and relationship with Defendant and his companies. *See, e.g.*, *Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, 320 F. App'x 323, 329–30 (6th Cir. 2008) (plaintiff was reasonable in hiring NYC counsel due to its longstanding representation of the party in other matters); *Davita Inc. v. Marietta Mem'l Hosp. Emp. Health Benefit Plan*, 2024 WL 4783910, at *4 (S.D. Ohio Nov. 14, 2024).[2]

Defendant also disputes Bass Berry's hourly rates. But, the cases Defendant cites for this

---

[2] Defendant relies on inapposite cases outside the indemnification context to argue that Lexon can recover attorneys' fees only at the local market rate for Nashville. Obj. at 9–10 (citing cases). Unlike fee-shifting statutes, which seek to encourage public interest litigation, contractual attorneys' fees provisions are freely bargained-for "contractual risk transfers." *Marlin v. Wetzel Cnty. Bd. of Educ.*, 569 S.E.2d 462, 468 (W. Va. 2002).

position are readily distinguishable.[3] As demonstrated in the Motion, Bass Berry's rates are justified and consistent with its undisputed "impressive credentials" and "strong reputation." ECF 141 at 14; ECF 132-7 ¶ 8; ECF 132-6 ¶ 10. As Defendant concedes, Bass Berry is a leading Nashville litigation firm with an excellent reputation and, thus, "can be expected to charge rates at or above the highest range in Nashville." ECF 141 at 13; *see also Waldo*, 726 F.3d at 821–22 (finding higher rate "justified and reasonable"). Even so, Bass Berry charged Lexon "preferred" hourly rates that are some 18–20% lower than its "standard" rates.

***The case was appropriately staffed and a reasonable amount of time was billed.*** Defendant cites a handful of billing entries out of hundreds to allege, without support, "pervasive overstaffing and overbilling." Obj. at 17–18. However, even these cherry-picked entries reflect a hard-fought case made more expensive by Defendant's choices. Courts routinely reject objections based on isolated line items—especially when the objector's own conduct and litigation choices drove cost. *See In re Johnson*, 580 B.R. 766, 797 (Bankr. S.D. Ohio 2018) (objector cannot complain about the debtor's fees when its own litigation conduct drove those fees). The hours reflect necessary, non-duplicative work by a core team on a complex record, with associates handling the most time-intensive tasks, including document review; legal research; preparation for depositions, court hearings, and mediations; and drafting.

***The costs and expenses are reasonable.*** Defendant's arguments that Lexon's costs and expenses are excessive also fail. To the extent Defendant criticizes certain costs and expenses, the relevant question is whether the expense was reasonably incurred. *See Daly v. Hill*, 790 F.2d 1071,

---

[3] *Supra* n.2. Moreover, the "recent local decisions" the *Southall* court cited for the proposition that fees in the range of $450-$550 are the upper-limit of what qualifies as "reasonable" were all employment discrimination cases—not complex business disputes like the present case. *See* 2023 WL 2668497, at *5–6 (M.D. Tenn. Mar. 28, 2023).

1085 n.18 (4th Cir. 1986) ("An expense award … must adequately compensate counsel without resulting in a windfall."). That standard is met here. For instance, Defendant challenges costs for lodging and travel associated with his deposition, but Defendant insisted that his deposition occur at The Greenbrier in West Virginia, necessitating such arrangements.[4] At trial, locating the out-of-town team and witnesses in the same hotel—at a negotiated rate comparable to other hotels in the area—close to the courthouse was the most efficient and reliable way to conduct trial.[5]

Lexon has not sought reimbursement of certain categories of costs that it is entitled to under the Guaranty, including litigation support, local travel, non-trial meals, and certain service of process costs. Mot. at 20. If the Court finds any line item excessive, the appropriate remedy is a targeted adjustment, not a wholesale reduction or categorical bar to agreed-upon costs. *See Scott Hutchison Enters. v. Cranberry Pipeline Corp.*, 318 F.R.D. 44, 58 (S.D.W. Va. 2016).

**The Guaranty does not limit this request.** Defendant's attempt to invoke Section 5(e)'s limitation fails, as it did at trial for his premium obligations. ECF 142 ¶¶ 45, 87. The Court found that Section 5(e) caps Defendant's liability for collateral obligations only; not his premium obligations or, by extension, Lexon's recovery of attorneys' fees and expenses.

**Interest.** Defendant does not object to Lexon's right to pre- and post-judgment interest or to Section 2's 6% rate. Defendant only objects to the Section 1 interest rates. The Court has already found that, under Section 1, Lexon is entitled to 7% pre-judgment and 3.75% post-judgment interest, compounded annually. ECF 142. The same rates should apply to this award.

For the foregoing reasons, Lexon respectfully requests that the Court grant its Motion.

---

[4] Defendant's ownership of The Greenbrier made it inappropriate for Lexon's counsel to stay there. So counsel flew into and stayed in nearby Charlottesville at a comparable hotel with a nightly rate of about $600—within the same range of The Greenbrier's nightly rate of about $500.

[5] Lexon respectfully requests that any other amounts not awarded under its Bill of Costs, ECF 128, be awarded to Lexon as non-taxable costs and expenses.

| Date: November 4, 2025 | */s/ W. Brantley Phillips, Jr.* |
| --- | --- |
| | W. Brantley Phillips, Jr. |
| | Garrah Carter-Mason |
| | **BASS, BERRY & SIMS PLC** |
| | 21 Platform Way |
| | Suite 3500 |
| | Nashville, TN 37203 |
| | (615) 742-6200 |
| | bphillips@bassberry.com |
| | garrah.cartermason@bassberry.com |
| | |
| | Jason M. Halper |
| | Sara E. Brauerman |
| | Timbre Shriver |
| | **VINSON & ELKINS LLP** |
| | 1114 Avenue of the Americas |
| | 32nd Floor |
| | New York, NY 10036 |
| | (212) 237-0000 |
| | jhalper@velaw.com |
| | sbrauerman@velaw.com |
| | tshriver@velaw.com |
| | |
| | *Attorneys for Plaintiff* |

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that, on November 4, 2025, the foregoing document was filed via the Court's ECF system, which will send a notice of electronic filing to all ECF-registered counsel of record.

                       */s/ W. Brantley Phillips, Jr.*